STATE OF NORTH CAROLINA v. NATHAN SHAW, Defendant

No. COA03-917

(Filed 15 June 2004)

## 1. Aiding and Abetting— voluntary manslaughter—intent

Defendant could properly be convicted for aiding and abetting voluntary manslaughter even though defendant argues that aiding and abetting requires specific intent to commit the underlying crime whereas voluntary manslaughter is a general intent crime, because: (1) defendant concedes that North Carolina has long held that an aider and abettor can be liable for voluntary manslaughter; (2) aiding and abetting is not a crime separate and apart from the underlying offense, but rather it is a theory upon which a person's culpability for the underlying offense may be based; and (3) depending upon the type of criminal intent required to consider an offender culpable for the underlying offense, an aider and abetter, like any other principal to an offense, may develop either specific or general intent.

## 2. Robbery— common law—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of common law robbery which was based on the taking of both money and marijuana from the victim's person and presence, because: (1) viewed in the light most favorable to the State, the evidence is sufficient to create an inference that defendant intended to aid, encourage, or assist his coparticipant in taking money from the victim's person; (2) the evidence showed the victim placed marijuana into a vase on defendant's porch for safekeeping while he visited defendant's house, and defendant took the marijuana and moved it into a hiding place in the garage while the victim was being assaulted by a coparticipant; and (3) even though defendant made the statement about the taking from the presence of the victim while defendant was in police custody, there was substantial cor-

roborating evidence to support the essential elements embraced in defendant's statement.

Appeal by defendant from judgments entered 31 October 2002 by Judge Wiley F. Bowen in Harnett County Superior Court. Heard in the Court of Appeals 26 April 2004.

*Roy A. Cooper, III, Attorney General, by Douglas W. Corkhill, Assistant Attorney General, for the State.*

*Rudolf, Maher, Widenhouse & Fialko, by Andrew G. Schopler, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant was charged, in proper bills of indictment, with second degree murder and common law robbery. He appeals from judgments imposing active sentences entered upon his convictions by a jury of voluntary manslaughter and common law robbery. We find no error.

The State's evidence at trial tended to show the following: On 3 October 2001, seventeen-year-old defendant Nathan Shaw invited his neighbor, co-defendant Ronnie Duncan, to spend the night at his house. The next morning, defendant invited another neighbor, Adam Mace, over to the house. Mace arrived with a shopping bag containing marijuana, and the three youths smoked marijuana and drank beer together on the porch. Mace placed some of the marijuana from the bag in a vase on defendant's front porch for safekeeping.

After some time had passed, Mace told Duncan that he owed him some money. When Duncan refused to give Mace any money, a fight ensued, and Duncan placed Mace in a headlock and told him to leave. Duncan then went into the house, prepared a joint of marijuana, and returned outside through the garage.

When Duncan returned, Mace was standing at the garage door and refused to leave. The two youths began fighting again, and Duncan quickly overpowered Mace, hitting him in the face ten to fifteen times. At this point, defendant, who had been present during the entire altercation, pulled out a buck knife belonging to Duncan, and began swinging it randomly around the two fighting youths. Defendant almost stabbed Duncan, at which time Mace grabbed the knife by the blade and took it away from defendant. Mace then started yelling that his hand was bleeding and Duncan stopped assaulting Mace.

Mace then got up, walked out of the garage, and yelled to the others that he would get them both. Upon hearing this, Duncan again attacked Mace, and the two youths began choking each other. After about two minutes, defendant shouted, "Kill him. Kill him. Are you going to let him hit you like that?" At this point, Duncan testified that he began to back off, but defendant shouted, "Go ahead and finish the job." The two youths then began choking each other again and during this altercation, Duncan strangled Mace to death. In his statement to police, defendant stated that when he realized Duncan was going to kill Mace, he decided to take Mace's stash of marijuana out of the vase on the front porch and put it into a radio in the garage.

When defendant and Duncan realized that Mace was dead, Duncan asked defendant to call the police. Defendant stated, "They'll never believe us," and suggested that they just bury the body on his property. The two youths then proceeded to take Mace's body approximately 180 yards into the woods behind defendant's house, where they buried him. As they were burying the body, Duncan retrieved $30 from Mace's right pocket. Duncan testified that he took $5 and defendant took $25; defendant claimed in his statement that he only took $5 of the money. During the burial, the two youths also concocted a story regarding the last time they saw Mace in case they were questioned by police. They returned to defendant's house, washed up, and divided the marijuana.

The following day, Mace was reported missing by his family. Five days later, after repeated questioning, defendant made a statement to law enforcement officers regarding Mace's death. He led the officers to Mace's body; as a result of defendant's statement to police, they were able to apprehend Duncan, who also confessed. Duncan pleaded guilty to second degree murder and common law robbery and testified for the State at defendant's trial.

Defendant neither testified nor offered any evidence. A jury found defendant guilty of voluntary manslaughter because of aiding and abetting and common law robbery, and he was sentenced in the presumptive range for each crime.

---

Defendant presents arguments in support of four of the seven assignments of error contained in the record on appeal. His remaining assignments of error are deemed abandoned. N.C. R. App. P. 28(a).

**[1]** Defendant first argues that his conviction for aiding and abetting voluntary manslaughter must be vacated because it is not a cognizable offense under North Carolina law. We disagree.

"[V]oluntary manslaughter is an intentional killing without premeditation, deliberation or malice but done in the heat of passion suddenly aroused by adequate provocation or in the exercise of imperfect self-defense where excessive force under the circumstances was used or where the defendant is the aggressor." *State v. Wallace*, 309 N.C. 141, 149, 305 S.E.2d 548, 553 (1983). Voluntary manslaughter is typically considered a general intent crime. *See State v. McCoy*, 122 N.C. App. 482, 485, 470 S.E.2d 542, 544, *disc. review denied*, 343 N.C. 755, 473 S.E.2d 622 (1996) (citing *State v. Clark*, 324 N.C. 146, 164, 377 S.E.2d 54, 65 (1989)). *But see State v. Rainey*, 154 N.C. App. 282, 289, 574 S.E.2d 25, 29, *disc. review denied*, 356 N.C. 621, 575 S.E.2d 520 (2002) (holding that heat of passion voluntary manslaughter is a specific intent crime).

"A person who aids or abets another in the commission of a crime is equally guilty with that other person as principal." *State v. Noffsinger*, 137 N.C. App. 418, 425, 528 S.E.2d 605, 610 (2000). In *State v. Kendrick*, 9 N.C. App. 688, 690, 177 S.E.2d 345, 347 (1970), this Court explained the elements of aiding and abetting as it applies to a bystander who is present at the crime:

> A person aids or abets in the commission of a crime within the meaning of this rule when he shares in the criminal intent of the actual perpetrator [], and renders assistance or encouragement to him in the perpetration of the crime. [] While mere presence cannot constitute aiding and abetting in legal contemplation, a bystander does become a[n aider and abettor] by his presence at the time and place of a crime where he is present to the knowledge of the actual perpetrator for the purpose of assisting, if necessary, in the commission of the crime, and his presence and purpose do, in fact, encourage the actual perpetrator to commit the crime. []

> *Id.*

Defendant argues that aiding and abetting requires specific intent to commit the underlying crime and since voluntary manslaughter is typically considered a general intent crime, it is legally impossible for one to aid and abet a voluntary manslaughter. Although defendant concedes that North Carolina has long held that an aider and abettor can be liable for voluntary manslaughter, *see, e.g., State v. Allison*,

200 N.C. 190, 195-96, 156 S.E. 547, 550 (1931); *State v. Burton*, 119 N.C. App. 625, 635-36, 460 S.E.2d 181, 189 (1995), he argues that our Supreme Court's holding in *State v. Coble*, 351 N.C. 448, 527 S.E.2d 45 (2000) implicitly challenges this principle.

In *Coble*, the Court held that since attempt is a specific intent crime and second degree murder is a general intent crime, it is legally impossible to commit attempted second degree murder because one cannot have specific intent to commit a general intent crime. 351 N.C. at 452, 527 S.E.2d at 48. However, this case is distinguishable from *Coble* because, unlike attempt, aiding and abetting is not a crime separate and apart from the underlying offense, *see Coble*, 351 N.C. at 449, 527 S.E.2d at 46, but rather it is a theory upon which a person's culpability for the underlying offense may be based, *see State v. Williams*, 299 N.C. 652, 655, 263 S.E.2d 774, 777 (1980) (explaining that a person may be found culpable for an offense if he "either (1) actually commits the offense[,] or (2) does some act which forms a part thereof, or (3) if he assists in the actual commission of the offense or of any act which forms part thereof, or (4) directly or indirectly counsels or procures any person to commit the offense or to do any act forming a part thereof") (internal quotation omitted); N.C. Gen. Stat. § 14-5.2 (2003) (abolishing the distinction between accessories before the fact, principals in the first degree and principals in the second degree, and punishing all parties who previously fell into one of these categories as principals to that crime). Thus, depending upon the type of criminal intent required to consider an offender culpable for the underlying offense, an aider and abetter, like any other principal to an offense, may develop either specific or general intent. *See, e.g., State v. Bond*, 345 N.C. 1, 24, 478 S.E.2d 163, 175 (1996) (aiding and abetting first degree murder); *State v. Allen*, 127 N.C. App. 182, 184, 488 S.E.2d 294, 296 (1997) (aiding and abetting second degree murder); *Burton*, 119 N.C. App. at 635-36, 460 S.E.2d at 189 (aiding and abetting voluntary manslaughter); *State v. Whitaker*, 43 N.C. App. 600, 605, 259 S.E.2d 316, 319 (1979) (aiding and abetting involuntary manslaughter). Defendant's argument to the contrary is overruled.

[2] In his next two assignments of error, defendant argues the trial court erred by failing to grant his motion to dismiss the charge of common law robbery because the evidence was insufficient as a matter of law. He also asserts that the lack of evidence regarding the taking of marijuana was so apparent as to make it grossly improper for the prosecutor to argue otherwise.

The trial court must grant a defendant's motion to dismiss if the State fails to present "substantial evidence (1) of each essential element of the offense charged and (2) that defendant is the perpetrator of the offense." *State v. Lynch*, 327 N.C. 210, 215, 393 S.E.2d 811, 814 (1990). "In determining the sufficiency of the evidence we consider it in the light most favorable to the State." *Id.*

In *State v. Herring*, 322 N.C. 733, 739, 370 S.E.2d 363, 368 (1988), our Supreme Court defined common law robbery as follows:

> Common law robbery is defined as the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear. The felonious taking element of common law robbery requires a taking with the felonious intent on the part of the taker to deprive the owner of his property permanently and to convert it to the use of the taker.

*Id.* (internal quotations and citations omitted). As previously discussed, "[a] person who aids or abets another in the commission of a crime is equally guilty with that other person as principal." *State v. Noffsinger*, 137 N.C. App. 418, 425, 528 S.E.2d 605, 610 (2000).

The State argued, and the indictment alleged, that defendant was culpable for common law robbery based on the taking of both money and marijuana from Mace's person and presence. Defendant first argues the State failed to present sufficient evidence that defendant intended to aid, encourage, or assist Duncan in committing common law robbery with regard to the taking of the money.

Duncan testified to the following regarding the taking of the money:

Q. How about any other items that belonged to [Mr. Mace]? Did you all take anything else?

A. $30

Q. And where did that come from?

A. [Mr. Mace]'s right pocket.

Q. When did you all find that money?

A. When we threw the clothes in the hole.

Q. And who was it that found it?

A. I did.

Q. And what did y'all do with the money?

A. [Defendant] kept $25 and I kept $5.

Our Supreme Court has stated that "intent is a mental attitude seldom provable by direct evidence" and thus, "must ordinarily be proved by circumstances from which it may be inferred." *Herring*, 322 N.C. at 740, 370 S.E.2d at 368. When the entire record is viewed in the light most favorable to the State, the evidence is sufficient to create an inference that defendant intended to aid, encourage, or assist Duncan in taking money from Mace's person.

Defendant next argues the evidence was insufficient to show that he took marijuana from the person or presence of Mace. With regard to common law robbery, our court has stated that "[t]he word 'presence' must be interpreted broadly . . . with due consideration given to the element of the crime that requires the property to be taken by violence or by putting [the victim] in fear." *State v. Styles*, 93 N.C. App. 596, 605, 379 S.E.2d 255, 261 (1989) (internal quotations omitted). In *Styles*, this Court found that money taken from a chair near the victim's bed after she had been forcibly raped and assaulted was sufficient to show a taking from the presence of the victim. *Id.*

In this case, the evidence showed that Mace placed marijuana into a vase on defendant's porch for safekeeping while he visited defendant's house. While Mace was being assaulted by Duncan, defendant took the marijuana and moved it into a hiding place in the garage. This evidence is equally sufficient "to show a taking from the presence of the victim through violence . . . ." *Id.; see also State v. Clemmons*, 35 N.C. App. 192, 196, 241 S.E.2d 116, 118-19, *cert. denied*, 294 N.C. 737, 244 S.E.2d 155 (1978) (where force or intimidation caused victim to flee the premises, property taken from the premises immediately after the victim's departure was deemed taken from the victim's presence).

Defendant argues that even if this evidence was sufficient to show a taking from the presence of the victim, it was based in part upon a statement made by defendant while in police custody and that such statements in non-capital cases are not competent to support a conviction unless there is "substantial independent evidence tending to establish its trustworthiness." *State v. Parker*, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985). The record, however, contains substantial corroborating evidence to support the essential elements embraced in the defendant's statement. *See id.* Thus, aspects of

defendant's statement may be used to support defendant's conviction for common law robbery, and defendant's assignment of error to the contrary is overruled.

Having determined that there was sufficient evidence to support defendant's conviction of common law robbery based on both the taking of Mace's money and marijuana, we need not address defendant's final argument that it was grossly improper for the prosecutor to argue that the jury could convict defendant of common law robbery based solely on the taking of marijuana. Defendant's final assignment of error is overruled.

No error.

Judges HUNTER and THORNBURG concur.