STATE OF NORTH CAROLINA v. VINCENT LAMONT HARRIS

No. COA03-1071

(Filed 5 October 2004)

**1. Evidence— rape shield law—exception—prior sexual contact relevant to injuries**

Evidence of a second-degree rape victim's prior sexual encounter on the day of the rape should have been admitted because it may have accounted for some of her injuries and was relevant to whether she consented to sex with defendant. A new trial was also granted on a common law robbery charge because the victim's credibility was essential to all of the charges. N.C.G.S. § 8C-1, Rule 412(b)(2).

**2. Sentencing— aggravating factors—underlying facts—requirements for finding**

A fact used to aggravate a sentence beyond the presumptive term must be found beyond a reasonable doubt by a jury, stipulated to by the defendant, or be found by a judge after the defendant has waived his right to a jury.

**3. Sentencing— sexual predator classification—not an aggra-
vating factor**

Defendant should not have been found to be a predator as a
nonstatutory aggravating factor for second-degree rape. There
are procedures for classifying a defendant as a sexually vio-
lent predator, but that finding is purely for classification (and
includes requirements such as registration) but does not have
sentencing implications.

Judge LEVINSON dissenting in part and concurring in part.

Appeal by defendant from judgments entered 26 and 27 February
2003 by Judge Abraham Penn Jones in Granville County Superior
Court. Heard in the Court of Appeals 20 May 2004.

*Attorney General Roy Cooper, by Assistant Attorney General
David L. Elliott, for the State.*

*Thomas R. Sallenger for defendant appellant.*

McCULLOUGH, Judge.

Defendant was found guilty on the charges of common law rob-
bery and second degree rape. The State's evidence tended to show the
following: On 13 April 2002, Shannon Parrott, a sixteen-year-old high
school student and the alleged victim in this case, was meeting her
friend Kevin at Southern States to walk together to Johnny's house,
their mutual friend. When Kevin did not arrive, the victim walked on
to Johnny's house alone. She alleges she left for Johnny's sometime
after midnight, and walked in total six or seven miles. En route to
Johnny's house, she approached a Texaco gas station and saw a group
of men hanging around a trash dump. As she walked past these men,
defendant approached her and put his arm around her. Defendant
asked the victim if she smoked marijuana, and she replied that she no
longer did. Defendant asked where the victim was going a number of
times, and she replied that she was going home. Defendant then
grabbed her by the back of the neck and dragged her in an alleyway
between a house and a church. At the time, the victim was wearing a
jacket, T-shirt, sweat pants, and carrying her book bag. In the alley-
way, he threw her on the ground, yanking down both her underwear
and her pants. He then put his penis in the victim's vagina without her
consent. When the victim tried to scream, defendant put his hand
over her mouth and told her to be quiet. He then turned her over and
put his penis in her rectum. He then made defendant pull her clothes

back on and look for his cell phone. The phone was never seen by the victim. He then threw her down, and forced his penis in the victim's vagina a second time without her consent. Next, he went through her bag and asked if she had any money. Defendant told the victim to pee and he told her he would kill her if she told anyone about the incident. Next, he took six rings from the victim's fingers. Defendant left the victim, and she went to her friend Johnny's house and told him what had happened. The following day the victim told her mother who took her to the police department. While there, the victim identified defendant in a photo lineup. The police department requested that she go to Maria Parham Hospital for a rape kit. At the hospital, a culdoscope was used to take pictures of lacerations, bruising, and tears on the victim's vaginal and rectal areas.

Defendant's evidence tended to show the following: Eugene Latta, a witness on the night in question, observed defendant and victim together just walking and talking. He then saw them and they were all hugged up. Latta did not hear a scream and he did not see a rape. During his cross-examination, Latta admitted to making a statement to police that he saw a male subject pull a girl to the side of the church against her will. He wrote the name of defendant. He claimed this statement was false and that he wrote it so the charge would not be pinned on him.

Defendant was 29 years old, married, and had three children. On the night in question, defendant first saw the victim walking near the Texaco gas station at around 11 o'clock. Defendant asked her what she was doing, and she said she was going to a friend's, and that someone had told her that her boyfriend was mad at her for getting caught having sex in the woods. They talked about hooking up and in fact did so an hour later. Then he and the victim smoked marijuana together before engaging in consensual sexual intercourse lasting twenty minutes. The intercourse was tacitly agreed to in exchange for the marijuana. The victim then offered defendant her rings in exchange for more marijuana. He gave one of the rings to his brother that night for money.

The issues raised by defendant's appeal are as follows: that the trial court erred when it did not allow defendant to question the victim concerning other alleged sexual activity she had on the day of the incident; that the trial court erred when it denied defendant's motion to dismiss the charge of second degree rape and common law robbery; and that the trial court erred in composing defendant's sentence

in finding the aggravating factors that defendant's offenses were especially heinous, atrocious, or cruel; and that defendant was a "predator." We now address these issues.

## I. Rape Shield

[1] Defendant, as preserved by objection at trial, now contends that he should have been able to question the victim concerning alleged sexual activity she had on the evening of the day in question. Specifically, defendant argues that the following testimony, elicited by defendant during an *in camera voir dire*, should have been allowed to be heard by the jury:

Q. [Defense counsel]: [Victim], can you tell what you did earlier in the day on April 13th?

A. [The victim]: I went to a friend's house after school.

Q. After school.

A. Yes.

Q. What day of the week was it?

A. I'm not—

Q. (Interposing) I believe, it was a Friday. So, after school you went to a friends.

A. Yes, ma'am.

* * * *

Q. Okay, and what did y'all do?

A. We walked around the neighborhood with some of her friends.

* * * *

Q. Okay. And are there woods nearby?

A. Yes, ma'am.

Q. Were you in those woods?

A. Yes, ma'am.

Q. Who were you with?

A. My boyfriend.

* * * *

**STATE v. HARRIS**

[166 N.C. App. 386 (2004)]

Q. . . . Do you go to school with him or did you go to school with him . . . ?

A. Yes, ma'am.

Q. Okay, did you have sex with him?

A. Attempted to.

* * * *

Q. . . . [Was] [your friend] and her friend with you at that time?

A. Yes, ma'am.

Q. Did they have sex?

A. They attempted to also.

Q. Okay, so you had your clothes off? Right?

A. I had on a skirt.

* * * *

Q. (Interposing) A skirt, okay.

A. My clothes were still on.

Q. Did he have his pants down?

A. I believe so.

Q. Okay, why did you not have sex?

A. Because it didn't—something told me it wasn't right. It didn't feel right. That it—something told—I had the gut instinct that it would be wrong and that something bad would happen.

Q. Okay, was the fact that he couldn't get hard have anything to do with it?

A. No, ma'am.

Q. Were y'all smoking pot.

A. No, ma'am.

Q. How long were y'all out in the woods?

A. Not long.

Q. All right. Thirty minutes or less?

A. Less.

**STATE v. HARRIS**

[166 N.C. App. 386 (2004)]

Q. Okay. Had you taken a towel out there with you so y'all would have something to lay on?

A. [My friend] did.

Q. Okay. Now, did y'all get in a little bit of trouble with [your friend]'s mom because somebody saw y'all out there?

A. Yes, ma'am.

Q. All right, tell us what happened.

A. [My friend]'s mom made me go home and she took [my friend] to the Granville County Hospital.

The State then asked:

Q. [The State]: [Victim], when you attempted to have sex with [your boyfriend], did he hurt you in anyway.

A. No, ma'am.

Q. Did you attempt any anal intercourse? Did you have anal intercourse with [him]?

A. No ma'am.

The trial court then asked:

THE COURT: [Victim], when you had the sexual encounter with this other person, prior to the events that you testified to with respect to the defendant, was there sexual penetration? Do you remember? Do you know what I am talking about?

A. [The victim]: No sir.

THE COURT: You don't. Let me be more explicit with you, if I can.

The boy with whom you had the—the boy with whom you tried to have sex earlier that day, did he put his penis into your vagina.

A. No, not quite.

THE COURT: Not quite. Did he attempt to?

A. Yes, sir.

The court did not allow any of this testimony to be heard based upon its application of North Carolina's rape shield law. Defendant contends one of the exceptions to the law applies.

N.C. Gen. Stat. § 8C-1, Rule 412 (2003), provides that "the sexual behavior of the complainant is irrelevant to any issue in the prosecution" except in four narrow situations. The exception defendant attempted to apply at trial, and that is the basis of this issue on appeal, states as follows:

> (2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant[.]

N.C. Gen. Stat. § 8C-1, Rule 412(b)(2). Defendant's defense at trial was consent. He believed that the evidence of the prior sexual encounter the victim had with her boyfriend may account for some of the physical evidence of the alleged force by defendant which was used for the rape conviction.

The State argues that this issue is governed by *State v. Fortney*, 301 N.C. 31, 269 S.E.2d 110 (1980). *Fortney* analyzed and found as constitutional the nearly identical rape shield law, N.C. Gen. Stat. § 8-58.6 (1980), before it was moved into N.C. Gen. Stat. § 8C-1 and the rules of evidence. *Fortney*, 301 N.C. at 36, 269 S.E.2d at 112. In *Fortney*, three different blood types of semen were found on the victim's panties, stockings, and robes. Upon cross-examination, the victim testified that she had intercourse with her boyfriend a day and a half before the rape, and that she was wearing the same underwear she wore the morning of the rape. She further testified she had not washed her bathrobe for at least a year and that her prior roommate, a sister, had worn it at times. At the conclusion of the *in camera voir dire* in that case, the trial court did not allow any questioning as to the various sources of the semen finding them to be irrelevant and inadmissible. *Id.* at 33, 269 S.E.2d at 110. The court did allow the defense counsel to question the victim at trial as to her sexual activity with third persons on the night of the crime. *Id.* Our Supreme Court found there to be no error made by the trial court in the *in camera* review. The court went on to state in dicta:

> The statute's exceptions provide ample safeguards to insure that relevant evidence is not excluded. G.S. 8-58.6(b)(2) specifically provides: "(b) The sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior: . . . (2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant. . . ." *This exception is clearly intended, inter alia, to allow evidence showing*

*the source of sperm, injuries or pregnancy to be someone or something other than the defendant. See generally,* Tanford & Bocchino, *supra* at 553.

*Id.* at 41, 269 S.E.2d at 114 (emphasis added) (footnote omitted).

In the instant case, we find the facts of *Fortney* distinguishable, and the dicta interpreting Rule 412(b)(2), then N.C. Gen. Stat. § 8-58.6(b)(2), applicable. Unlike *Fortney,* the sexual activity sought to be admitted before the jury relates to a sexual encounter by the victim on the day of the alleged rape. However, even in *Fortney,* the trial judge allowed questioning as to sexual encounters with third parties on the night of the crime. However, evidence of intercourse on the same day is clearly not always admissible. *See State v. Rhinehart,* 68 N.C. App. 615, 316 S.E.2d 118 (1984) (The victim had consensual sex with her former boyfriend of four years on the night of the incident.). In this case the evidence is relevant and probative as to whether or not the victim consented to having sex with defendant. Had she consented, then it is within reason that no physical evidence of vaginal injury on the victim was caused by defendant. Thus, if the jury found the lacerations on the vagina (which evidence was used by the State to prove the rape) to have been caused by the attempted sexual encounter earlier that day, they could still harbor reasonable doubt as to whether or not the victim consented to having sex with defendant. The fact that there was evidence of lacerations and bruising to the victim's rectal area does not negate the relevancy of the victim's sexual encounter on the day of the incident and that injuries to her vaginal area may have been caused by someone other than defendant. One element of second degree rape is that the intercourse be vaginal. N.C. Gen. Stat. § 14-27.3 (2003).

Therefore, we reverse on this issue, and grant a new trial in which the evidence of the prior sexual encounter on the day of the alleged rape should be admitted. *See State v. Guthrie,* 110 N.C. App. 91, 428 S.E.2d 853, *disc. review denied,* 333 N.C. 793, 431 S.E.2d 28 (1993). Furthermore, we reverse and grant a new trial on the charge of common law robbery as we believe the victim's credibility after cross-examination as to her prior sexual encounter is essential to support all charges stemming from the entire criminal transaction.

## II. Aggravating Factors

Though defendant has been granted a new trial, we here address those issues relating to defendant's sentencing which may

recur at any new trial and to which defendant assigned as error. On the felony judgment form finding aggravating and mitigating factors, the trial court found the statutory aggravating factor that "the offense was especially heinous, atrocious, or cruel." Additionally, the court found the nonstatutory aggravating factor that defendant "IS A PREDATOR[]." These findings by the court were used to enhance defendant's sentence for his offenses into the aggravated sentencing range. Defendant believes both of these factors in aggravation were found in error. We agree.

### A. The Offense was Especially Heinous, Atrocious, or Cruel

[2] The U.S. Supreme Court recently held that the "statutory maximum" for any offense is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely v. Washington*, —— U.S. ——,——, 159 L. Ed. 2d 403, 413. The high Court further explained that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without any additional findings*." *Blakely*, —— U.S. at ——, 159 L. Ed. 2d at 413-14 (emphasis added). Thus, any additional findings that may be used to increase a defendant's sentence, but not found by the jury, are otherwise made in violation of defendant's Sixth Amendment Right to trial by jury. *Id.* at ——, 159 L. Ed. 2d at 415. The only exception to this would be if the defendant has stipulated to those facts which have increased his sentence, or waived his right to a jury. *Id.* at ——, 159 L. Ed. 2d at 417-18.

Our Court, in *State v. Allen*, 166 N.C. App. 139, 149, 601 S.E.2d 299, 306 (2004), adopted the high Court's principles in *Blakely* to North Carolina's sentencing scheme concerning a court's ability to enhance a defendant's sentence by finding factors in aggravation. *See* N.C. Gen. Stat. § 15A-1340.16 (2003). In *Allen* we held that, pursuant to *Blakely*, the defendant was denied his Sixth Amendment right to a jury trial when the trial court unilaterally found that the offense that defendant committed in that case was "especially heinous, atrocious and cruel." *Allen*, 166 N.C. App. at 147-48, 601 S.E.2d at 305.

Therefore, pursuant to *Allen* and *Blakely*, should the court at any new trial use a factor in aggravation to impose a sentence beyond the presumptive term for which defendant has been found guilty, the fact must be found by the following: beyond a reasonable doubt by the

jury, stipulated to by defendant, or defendant shall have waived his right to a jury such that judicial fact finding would be appropriate.

### B. Defendant is a Predator

[3] Turning to the next sentencing issue that may arise at any new trial. The term "predator" in the North Carolina's criminal code, as related to sex offenses, is a specifically defined legal classification of sex offenders. N.C. Gen. Stat. § 14-208.6(6) (2003) defines a "sexually violent predator" as:

> (6) "Sexually violent predator" means a person who has been convicted of a sexually violent offense and who suffers from a mental abnormality or personality disorder that makes the person likely to engage in sexually violent offenses directed at strangers or at a person with whom a relationship has been established or promoted for the primary purpose of victimization.

N.C. Gen. Stat. § 14-208.20 (2003) provides procedures for determining if an individual is a sexually violent predator for the purpose of this criminal classification. The statute states:

> (a) . . . If the district attorney intends to seek the classification of a sexually violent predator, the district attorney shall within the time provided for the filing of pretrial motions under G.S. 15A-952 file a notice of the district attorney's intent. . . .

> (b) Prior to sentencing a person as a sexually violent predator, the court shall order a presentence investigation in accordance with G.S. 15A-1332(c). However, the study of the defendant and whether the defendant is a sexually violent predator shall be conducted by a board of experts selected by the Department of Correction. The board of experts shall be composed of at least four people. Two of the board members shall be experts in the field of the behavior and treatment of sexual offenders, one of whom shall be selected from a panel of experts in those fields provided by the North Carolina Medical Society and not employed with the Department of Correction or employed on a full-time basis with any other State agency. One of the board members shall be a victims' rights advocate, and one of the board members shall be a representative of law enforcement agencies.

> (c) When the defendant is returned from the presentence commitment, the court shall hold a sentencing hearing in accord-

ance with G.S. 15A-1334. At the sentencing hearing, the court shall, after taking the presentencing report under advisement, make written findings as to whether the defendant is classified as a sexually violent predator and the basis for the court's findings.

N.C. Gen. Stat. § 14-208.20. When classified as a sexually violent predator, a defendant, among other requirements, must maintain registration as a sex offender for life. *See* N.C. Gen. Stat. § 208.23; N.C. Gen. Stat. § 14-208.6A (2003). However, there are no sentencing implications in the court's finding of a defendant to be a predator under this statute that allow the court to extend a defendant's sentence beyond the presumptive range for the sex crime for which he has been convicted. It is purely a means of classification.

We believe that in the case at bar, in light of the potential misuse and confusion which may be caused due to the other legal implications of the term predator, the court's listing "DEFENDANT IS A PREDATOR" as a nonstatutory factor in aggravation was improper and should not be considered at any new trial for such purposes.

After close review of the transcript, record, and briefs, we hereby grant defendant a new trial.

New trial.

Judge HUDSON concurs.

Judge LEVINSON dissents in part and concurs in part.

LEVINSON, Judge, dissenting in part and concurring in part.

I respectfully disagree with the majority opinion's reasoning and conclusion concerning the application of Rule 412 to the second degree rape conviction. I would find no error in this conviction. I also dissent from the majority's conclusion that defendant's conviction for common law robbery should be reversed. I would vote to find no error in the trial of either felony. I concur with the majority's decision to remand for resentencing in light of *Blakely v. Washington*, —— U.S. ——, 159 L. Ed. 2d 403 (2004).

The trial court did not err by excluding evidence of the victim's sexual activity with her boyfriend. The admissibility of evidence of a victim's sexual activity with individuals other than the defendant is

generally prohibited by the rape shield law, N.C.G.S. § 8C-1, Rule 412 (2003). Under Rule 412(b)(2), such evidence is admissible if it is "evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant." "This exception is clearly intended, *inter alia*, to allow evidence showing the source of sperm, injuries or pregnancy to be someone or something other than the defendant." *State v. Fortney*, 301 N.C. 31, 41, 269 S.E.2d 110, 115 (1980). Thus, "**evidence showing the source** of . . . **injuries** . . . to be someone or something **other than the defendant**" is admissible. However, "[n]aked inferences of prior sexual activity by a rape victim with third persons, without more, are irrelevant to the defense of consent in a rape trial." *Id.* at 44, 269 S.E.2d at 117. In the instant case, there was no evidence that the victim's prior sexual activities were the source of her injuries; accordingly, the trial court properly excluded evidence of these.

Appellate cases finding error in a trial court's exclusion of evidence of sexual activity with third parties are those in which there was some **evidence** tending to support the defense theory that the victim's injuries or condition were not caused by the defendant. *See, e.g., State v. Ollis*, 318 N.C. 370, 348 S.E.2d 777 (1986) (where victim testified on *voir dire* that she was raped by a **second** man on the same night that the defendant raped her, defendant should be allowed to cross-examine victim about the other rape); *State v. Wright*, 98 N.C. App. 658, 392 S.E.2d 125 (1990) (where doctor testified that victim's vaginal irritation might be caused by masturbation, testimony of her grandmother that she frequently saw victim engaged in masturbation was relevant).

In the instant case, the victim testified that defendant forcibly raped her vaginally and also forced her to engage in anal sex. The State presented uncontradicted testimony, from the supervising forensic nurse in the Sexual Assault Program of the hospital where the victim was treated, that the victim suffered multiple "areas of lacerations, skin tears, [and] bruising" of her genital area, including labial lacerations, perineal bruising, and "multiple areas of [rectal] lacerations." In addition, her cervix was "very bruised and swollen," and she exhibited "active oozing [and] bleeding" of her anus. The nurse testified further that, although it might be physically "possible" for an individual to receive these injuries by consensual participation in "rough sex," she found the injuries consistent with sexual assault.

It was in this evidentiary context that the defendant tried to introduce the evidence that the victim had engaged in consensual sexual

activity with her boyfriend earlier that day, which activity did **not include** vaginal or anal intercourse, and which **did not hurt or injure the victim**. Neither the victim's testimony on *voir dire*, nor any other evidence or testimony, suggested any possibility that the earlier sexual activity was the source of the victim's injuries. Accordingly, the victim's earlier episode of "fooling around" with her high school boyfriend did **not** constitute "evidence of specific instances of sexual behavior . . . showing that the act or acts charged were not committed by the defendant" and thus was not admissible under Rule 412(b)(2).

The majority opinion indicates that the evidence of the victim's other sexual activities with others would be useful to the defense, as a *theoretical* alternative source of the victim's vaginal and anal injuries. However, the test for admissibility is not whether or not the proffered evidence would be helpful to the defense, but whether it is **legally relevant** to an issue in the case. *See* N.C.G.S. § 8C-1, Rule 402 (2003) ("relevant evidence is admissible, . . . Evidence which is not relevant is not admissible"); N.C.G.S. § 8C-1, Rule 401 (2003) (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Absent any evidence that the earlier sexual activity caused vaginal or anal injury, it does not tend to show that someone other than the defendant committed the offenses, and thus has no legal relevance. In his brief, defendant baldly asserts that "any tears and fissures as described by [the victim] could just as likely have been created by [the victim's] encounter with her friend." However, without some affirmative evidence or testimony supporting this position, it is simply speculation, and does not render otherwise inadmissible testimony admissible.

The defendant argues further that evidence that the victim had sex with someone else was "competent to corroborate the testimony of the defendant that there had been no violence nor any force utilized during the course of the encounter and that the defendant was not the cause of the tears and fissures." Defendant misstates the law in this regard. Such evidence is admissible only if there is some **basis other than the defendant's denial that he committed rape**, tending to show that the other activity led to vaginal tearing.

Moreover, "to receive a new trial, defendant has the burden of showing that there was a reasonable possibility the jury would have reached a different verdict had the error in question not been com-

mitted. N.C.G.S. § 15A-1443(a)." *State v. Ligon,* 332 N.C. 224, 239, 420 S.E.2d 136, 145 (1992). In the instant case, I conclude that even assuming, *arguendo,* that the trial court erred by excluding the evidence, the defendant was not prejudiced thereby. The *voir dire* testimony was that the victim had engaged in consensual sexual activity that did not hurt her, and that did not include vaginal or anal intercourse. This evidence would not have affected the outcome of the trial for several reasons.

First, defendant was able to present evidence that the injuries could have existed before the alleged rape. For example, the forensic nurse acknowledged that the injuries could have occurred 6-12 hours preceding the encounter with the defendant. Secondly, there was uncontradicted expert testimony that the victim's multiple, severe vaginal and rectal injuries were consistent with a sexual assault. Because the *voir dire* testimony actually **negates** the prospect that she was hurt as a result of the earlier encounter—and suggests there was neither vaginal nor anal intercourse—this testimony would have done nothing to rebut or contradict the State's evidence as to the origin of the injuries. Third, a comparison of the uncontradicted evidence concerning the victim's injuries with the *voir dire* testimony leaves little doubt that the jury would have reached the same result.

I would further note that the trial court gave thoughtful consideration to this issue before rendering its ruling. After conducting an extensive *voir dire,* the trial court weighed the relevancy and Rule 412 issues very carefully, and stated:

I think the Rape Shield law is designed to protect women from the shotgun defense that if she would do it with Jack, she'd do it with Jim[.] . . . And I think the only time it really becomes pertinent, this prior sexual behavior if defendant testifies that she was raped *and up until that time—well, there is some—something very significant about the physical activity of some prior event that could have caused the same thing.* I think here, even if there's prior sex, the tearing really is a red—in some way a red herring. It's not really—whether it is tearing during consensual or nonconsensual sex, it's not really dispositive of whether there is a consent between her and Mr. Harris, one way or the other. (emphasis added).

The trial court was correct. The fact that the injuries were so significant, together with the absence of any suggestion on *voir dire* that the victim was injured by her boyfriend, supports the trial court's

determination that there was no evidence that the injuries originated during earlier sexual activity. Further, as the judge observed, earlier sexual activity of the victim, whether gentle or "rough," does not bear on the question of the victim's consent to have sex with defendant. "Although '[the] trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard . . . such rulings are given great deference on appeal.' " *Dunn v. Custer*, 162 N.C. App. 259, 266, 591 S.E.2d 11, 17 (2004) (quoting *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991)). I cannot conclude, applying deferential review, that the trial court erred by excluding this evidence.

Finally, I believe that this is precisely the type of evidence that the rape shield law is intended to exclude. Where there is no evidence that places the prior sexual activity within an exception to the statute, its admission serves no valid purpose and is not relevant. In his brief, the defendant states that "the determination of the fact of whether there was forcible penetration is made more probable by evidence of [the victim's] sexual encounter with another male within 24 hours of the date of the alleged offense in this cause." This is, of course, **exactly** what Rule 412 excludes.

I also dissent from the majority opinion that the common law robbery conviction should be reversed because questions related to the victim's prior sexual encounter may bear on defendant's common law robbery charge. For the reasons stated above, I disagree. Moreover, defendant does not even make an argument related to whether the trial court's failure to admit certain evidence should result in a new trial. Defendant's only argument on appeal is nonsuit. " 'Common law robbery is defined as the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear.' " *State v. Shaw*, 164 N.C. App. 723, 728, 596 S.E.2d 884, 888 (2004) (quoting *State v. Herring*, 322 N.C. 733, 739, 370 S.E.2d 363, 368 (1988)). There is clearly substantial evidence of every element of the common law robbery offense. I would find no error as to common law robbery.