An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-480

NORTH CAROLINA COURT OF APPEALS

Filed: 4 March 2014

STATE OF NORTH CAROLINA

v.                                          Rockingham County
                                           Nos. 11 CRS 51074-75
TREVOR TYRONE WATLINGTON


Appeal by defendant from judgment entered 16 August 2012 by Judge Richard W. Stone in Rockingham County Superior Court. Heard in the Court of Appeals 10 October 2013.

> *Roy Cooper, Attorney General, by Anne Goco Kirby, Assistant Attorney General, for the State.*

> *Staples Hughes, Appellate Defender, by Jillian Katz, Assistant Appellate Defender, for defendant-appellant.*


DAVIS, Judge.


Defendant Trevor Tyrone Watlington ("Defendant") appeals from his convictions for second degree kidnapping, common law robbery, and resisting, delaying, or obstructing a public officer. On appeal, he argues that the trial court erred in (1) denying his motion to dismiss all of the charges that had been lodged against him based on the insufficiency of the evidence;

and (2) instructing the jury concerning flight. After careful review, we conclude that Defendant received a fair trial free from prejudicial error.

**Factual Background**

The State presented evidence at trial tending to establish the following facts: Around 6:00 p.m. or 7:00 p.m. on the evening of 6 April 2011, Tara Taylor ("Ms. Taylor") was driving a blue Chevrolet Trailblazer. While she was stopped at the intersection of South Scales Street and Sands Road in Reidsville, North Carolina, she saw Defendant standing beside her passenger-side car door. Shocked and frightened, Ms. Taylor told Defendant: "I don't know you. Get out of my . . . get off of my truck!" She then pulled out in front of oncoming traffic in an attempt to prevent Defendant from getting into her vehicle. However, Defendant had already stepped onto the running board on the side of her vehicle, and he then proceeded to reach through the open passenger-side window and open the door from the inside, thereby forcing his way into the Trailblazer.

Defendant told Ms. Taylor: "I don't have anything to live for. We're going to die today." Ms. Taylor pleaded with Defendant: "Please don't kill me . . . I'm a Christian. I'm a

single mom. I need to be here for my mom and my kids." Defendant responded by instructing Ms. Taylor to "keep driving." She continued to drive in the direction indicated by Defendant. Upon entering a residential area, she pulled her vehicle into a grass driveway in front of a house, put the vehicle in park, and began honking her horn in the hope that someone would come out of the residence to assist her.

When no one came out of the house, Ms. Taylor opened the driver-side door of the Trailblazer, stuck her head and the left side of her body out of the vehicle, and proceeded to scream for help while continuing to hold onto the steering wheel and honk the horn. Defendant exited the passenger-side door, walked around to the front of the vehicle, screamed at Ms. Taylor that she was drawing attention to him, and demanded that she get back inside.

Ms. Taylor then tried to maneuver her body all the way back into the Trailblazer for the purpose of trying to drive away from Defendant. However, Defendant got back into the vehicle first. As Ms. Taylor continued to hold onto the steering wheel, he hit her torso with his left hand. Ms. Taylor pleaded with Defendant to stop hitting her. However, Defendant continued to do so and began pushing and otherwise "dominating her" as he

climbed over her into the driver's seat and grabbed the steering wheel. Defendant then pushed Ms. Taylor out of the Trailblazer as she begged him: "Please don't do this." Defendant drove the vehicle over Ms. Taylor's foot as he hurriedly backed the vehicle out of the grass driveway and quickly sped away.

Shortly thereafter, Ms. Taylor saw Defendant "flying" back down the street after having circled back in her direction in her blue Trailblazer. She jumped into a ditch and hid until Defendant was out of sight and then got up to run for help. After a few minutes, Tai Ashe, who was driving through the area, saw Ms. Taylor and stopped to help her.

Officer Jamie Bayne ("Officer Bayne"), an officer with the Reidsville Police Department who was on patrol in the area, observed a blue Trailblazer coming towards him at a high rate of speed. Officer Bayne turned around, activated his blue lights and siren, and began pursuing the Trailblazer. Officer Bayne observed the Trailblazer driving away from him on Vance Street, heading back towards the area of Harrison Street. Officer Bayne was unable to catch up to the Trailblazer because it was going so fast, and he ultimately lost sight of it.

Robert Jackson ("Mr. Jackson") was driving his two children from their home on Lindsey Street. As he approached a stop sign

on Lindsey Street, a blue SUV (later identified as Ms. Taylor's Trailblazer) ran through the stop sign and struck his vehicle on the driver's side.  After hitting Mr. Jackson's vehicle, the SUV lost control in the middle of the street and rolled over several times before landing in a neighbor's yard.  Mr. Jackson got out of his car and saw that Defendant had exited the wrecked SUV and was walking up the street.  When Defendant got to the street corner, he turned right and continued walking, yelling obscenities to people he encountered.

Officer Bayne was dispatched to Lindsey Street from the area where he had been searching for the Trailblazer.  As he was sitting in his patrol car, a man — who Officer Bayne later learned was Defendant — walked up to Officer Bayne and asked him for a ride.  Officer Bayne told the man "no" and proceeded to turn right onto Lindsey Street while continuing to search for the Trailblazer.

Officer Bayne thereafter heard radio traffic stating that there had been a wreck on Lindsey Street near Ware Street and that the driver, a black male wearing a black cap, white T-shirt, and blue jeans, had fled the scene on foot.  Upon hearing this description, Officer Bayne realized that it matched the appearance of the man who had just approached him and asked him

for a ride. Officer Bayne turned around and drove back to the area of Lindsey and Vance Streets in search of Defendant.

Upon turning left onto Vance Street, Officer Bayne saw Defendant walking westbound towards Harrison Street. Officer Bayne pulled his patrol vehicle over, got out, and yelled at Defendant to stop because he needed to speak with him. Because Defendant did not stop, Officer Bayne yelled several more times: "Hey, stop. I need to speak with you. Come here. Where are you going? Stop." Defendant continued walking away from Officer Bayne. At that point, Officer Bayne grabbed Defendant by the arm, turned him around, and again told Defendant that he needed to talk to him.

Officer Bayne subsequently placed Defendant under arrest for resisting a public officer. On 6 June 2011, the Rockingham County grand jury returned bills of indictment charging Defendant with second degree kidnapping and common law robbery. Defendant was also charged by warrant with resisting, delaying, or obstructing a public officer. The charges came on for trial at the 13 August 2012 criminal session of Rockingham County Superior Court.

Defendant did not testify or present evidence at trial. On 16 August 2012, a jury found Defendant guilty of second degree

kidnapping, common law robbery, and resisting, obstructing, or delaying a public officer. Defendant was sentenced as a habitual felon to an aggravated, consolidated term of 120 to 153 months.

Defendant sent a *pro se* handwritten notice of appeal dated 21 August 2012 to the Rockingham County Clerk of Superior Court. However, the notice of appeal failed to meet the requirements set out in Rule 4 of the North Carolina Rules of Appellate Procedure. On 20 September 2012, the Appellate Defender's Office was assigned to represent Defendant, and on 5 June 2013, appellate counsel filed a petition for a writ of certiorari with this Court.[1] We elect to grant Defendant's petition and consider the merits of his appeal.

## Analysis

### I. Denial of Motion To Dismiss

Defendant argues that the trial court erred in denying his motion to dismiss all of the charges that had been lodged against him based on the insufficiency of the evidence. Whether evidence is sufficient to withstand a motion to dismiss is a question of law that is reviewed *de novo* on appeal. *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007). A

---

[1] Defendant's appellate counsel subsequently withdrew as counsel.

defendant's motion to dismiss should be denied if there is substantial evidence of (1) each essential element of the offense charged; and (2) the defendant being the perpetrator of the offense. *State v. Scott*, 356 N.C. 591, 595, 573 S.E.2d 866, 868 (2002). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

In ruling on a motion to dismiss, the trial court is required to view all the evidence – whether direct, circumstantial, or both – in the light most favorable to the State, drawing all the reasonable inferences from the evidence in favor of the State. *State v. Kemmerlin*, 356 N.C. 446, 473, 573 S.E.2d 870, 889 (2002). Contradictions and discrepancies of fact are for the jury to resolve and, consequently, do not warrant dismissal. *State v. Powell*, 299 N.C. 95, 99, 261 S.E.2d 114, 117 (1980).

**A. Kidnapping**

N.C. Gen. Stat. § 14-39 states:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint[,] or removal is for

the purpose of:

. . . .

(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or

(3) . . . terrorizing the person so confined, restrained or removed . . . .

N.C. Gen. Stat. § 14-39 (2013).

In this context, the term "restrain" means to restrict by force, threat, or fraud, with or without confinement. *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978). Consequently, proof of the use of physical force is not required in establishing the "restraint" prong of second degree kidnapping; rather, evidence of a threat or intimidation will suffice in certain circumstances.

> [T]he use of actual physical force is not essential to the commission of the offense, and the crime of kidnapping may be committed "by threats and intimidation and appeals to the fears of the victim which are sufficient to put an ordinarily prudent person in fear for his life or personal safety, and to overcome the will of the victim and secure control of his person without his consent and against his will, and are equivalent to the use of actual physical force or violence."

*State v. Ballard*, 28 N.C. App. 146, 148, 220 S.E.2d 205, 206 (1975) (quoting *State v. Bruce*, 268 N.C. 174, 182-83, 150 S.E.2d

216, 223 (1966)). Once the restraint prong of second degree kidnapping has been established, the State may successfully satisfy the remaining requirements of the offense by demonstrating *either* that (1) the defendant restrained the victim in "[f]acilitating the commission of any felony or facilitating flight of any person following the commission of a felony;" or (2) the defendant "terroriz[ed] the person so confined, restrained or removed." N.C. Gen. Stat. § 14-39.

> Kidnapping is a specific intent crime, therefore the State must prove that the defendant unlawfully confined, restrained, or removed the victim for one of the specified purposes outlined in the statute. Although an indictment may allege multiple purposes, the State need only prove one of the alleged purposes in order to sustain a conviction of kidnapping.

*State v. Surrett*, 109 N.C. App. 344, 348-49, 427 S.E.2d 124, 126 (1993). In the present case, while proof of either would have sufficed, the State successfully established both that (1) Defendant restrained Ms. Taylor for the purpose of facilitating the commission of the felony of common law robbery; and (2) he terrorized her. We discuss each in turn.

### i. Facilitating the Commission of a Felony

Our Supreme Court has made clear that "certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed

without some restraint of the victim" and that restraint "which is an inherent, inevitable feature of [the] other felony" may not be used to convict a defendant of kidnapping. *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351.

> Cases since *Fulcher* have held that the key question is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping exposed the victim to greater danger than that inherent in the underlying felony itself. *See State v. Beatty*, 347 N.C. 555, 559, 495 S.E.2d 367, 369 (1998). Evidence that a defendant increased the victim's helplessness and vulnerability beyond what was necessary to enable the robbery or rape is sufficient to support a kidnapping charge. *Id.*

*State v. Muhammad*, 146 N.C. App. 292, 295, 552 S.E.2d 236, 237 (2001).

Defendant argues that the State's evidence of restraint failed to prove more than that degree of restraint inherent in common law robbery. Specifically, he contends that he did not remove, restrain, or confine Ms. Taylor. In support of this argument, he claims that Ms. Taylor's will was never overcome and that she maintained complete control of her Trailblazer at all times, pointing to the fact that she did not follow all of his directions once he was inside the vehicle. We disagree.

At trial, the State presented evidence that (1) Ms. Taylor was sitting alone in her vehicle; (2) Defendant stood on the running board and reached through the window to open the door; (3) Defendant then told Ms. Taylor: "I don't have anything to live for. We are going to die today;" (4) Ms. Taylor responded: "Please don't kill me. I'm a Christian. I'm a single mom;" (5) Defendant ordered Ms. Taylor to "keep driving;" (6) Ms. Taylor drove to a residential area and began honking the horn while simultaneously sticking half of her body outside the opened driver-side door and screaming for help; (7) Defendant then proceeded to climb into the driver's side of the vehicle and began hitting her; and (8) Defendant then pushed her out of the car.

In holding that this evidence was sufficient to establish restraint beyond that inherent in common law robbery, we are guided by our decision in *State v. Parker*, 81 N.C. App. 443, 344 S.E.2d 330 (1986). In *Parker*, the defendant emerged from the back seat of the victim's car where he had been hiding as she began to drive out of a parking lot and ordered the victim to "just drive." *Id*. at 444, 344 S.E.2d at 331. The defendant then directed the victim to drive to a motel parking lot where he proceeded to rob her of her jewelry. *Id.* We held that the

defendant's conduct in forcing the victim to drive to the back of the motel "was not necessary to the accomplishment of the robbery and did, in fact, expose the victim to danger greater than that inherent in the robbery itself." *Id.* at 447, 344 S.E.2d at 333.

In the present case, the State's evidence that Defendant entered Ms. Taylor's vehicle and instructed her to "keep driving" was sufficient to allow a jury to infer that Defendant intended to keep her in the vehicle after he gained entry into the Trailblazer.  Requiring her to remain in the vehicle and continue driving was not an act necessary to accomplish the underlying theft of the vehicle since Defendant could have allowed Ms. Taylor to exit the Trailblazer when he first gained entry.  Thus, Defendant's removal and restraint of Ms. Taylor was a separate and distinct act beyond the scope of the underlying robbery, thereby satisfying the second prong of second degree kidnapping.

### ii. Terrorizing

Defendant also argues that the evidence was insufficient to show that Defendant intended to terrorize Ms. Taylor.  While proof of this element was not necessary in light of our conclusion that the State offered sufficient evidence that

Defendant restrained Ms. Taylor for the purpose of facilitating the commission of a felony, we nevertheless conclude that sufficient evidence of terrorizing also existed as a separate ground for the kidnapping charge.

"Terrorizing is defined as more than just putting another in fear. It means putting that person in some high degree of fear, a state of intense fright or apprehension." *State v. Boozer,* 210 N.C. App. 371, 375-76, 707 S.E.2d 756, 761 (2011) (citation and quotation marks omitted), *disc. review denied*, ___ N.C. ___, 720 S.E.2d 667 (2012). "In determining the sufficiency of the evidence, the test is not whether subjectively the victim was in fact terrorized, but whether the evidence supports a finding that the defendant's purpose was to terrorize the victim." *Id.* (citation, quotation marks, and emphasis omitted). Moreover, "[t]he presence or absence of the defendant's intent or purpose to terrorize [the victim] may be inferred by the fact-finder from the circumstances surrounding the events constituting the alleged crime." *State v. Baldwin*, 141 N.C. App. 596, 605, 540 S.E.2d 815, 821 (2000).

We find our decision in *Ballard* instructive. In *Ballard*, the victim was a young woman seated alone in her car which was stopped at a red light. *Ballard*, 28 N.C. App. at 147, 220

S.E.2d at 206. The defendant, a stranger to her, got in the car on the passenger side and ordered her "just to drive." *Id.* The victim testified that she was afraid that if she did not do what he said, he would harm her in some way. *Id.* When they drove by a country club, she started blowing the horn and screaming for help. *Id.* As she pulled the keys from the ignition and opened her door, the defendant pulled her back into the car by her hair, retrieved an object from his pocket, and said: "I'm going to cut you." *Id.* The defendant then bit her hand until she let go of the keys, pushed her out of the car to the ground, and then drove away in the car. *Id.*

This Court held that the evidence of restraint present in *Ballard* was sufficient in and of itself to constitute terror, and was therefore sufficient to support the defendant's kidnapping conviction.

> Threats by actions may be more effective than when made by mere words, and defendant's uninvited entrance into the car under these circumstances in itself constituted a threat. . . . We find the evidence sufficient to support a jury finding that defendant's conduct on first entering the car and in directing [the victim] where to drive under the circumstances here disclosed constituted such a threat as to put an ordinarily prudent person in fear for her life or personal safety so as to secure control of her person against her will. From that

> point on there was an ample showing of
> asportation to constitute the crime of
> kidnapping. Defendant's subsequent conduct
> establishes that [the victim's] fears, first
> aroused when defendant got into her car,
> were far from groundless.

*Id.* at 148-49, 220 S.E.2d at 207; *see also Surrett*, 109 N.C. App. at 349-50, 427 S.E.2d at 127 (holding that requirement of terrorizing for second degree kidnapping charge was satisfied where victim was physically forced by defendant into defendant's car, was told to remain quiet, and quickly escaped through window before car left parking lot).

In the present case, the State introduced evidence that after entering Ms. Taylor's vehicle by force, Defendant told her: "I have nothing to live for" and then said that "[w]e are going to die today." The ominous implication of Defendant's statements, taken in conjunction with the forceful and sudden manner in which Defendant gained entry into her vehicle, was clearly sufficient for the jury to infer that Defendant intended to terrorize the victim.

We therefore hold that under either a theory of (1) exposing the victim to danger greater than that inherent in the robbery itself; or (2) terrorizing the victim, Defendant's motion to dismiss the charge of second degree kidnapping was properly denied.

**B. Common Law Robbery**

Defendant also contends that his motion to dismiss the charge of common law robbery should have been granted based upon his argument that he did not intend to permanently deprive Ms. Taylor of her car – an element of common law robbery. We disagree.

> Common law robbery is defined as the felonious, non-consensual taking of money or personal property from the person or presence of another by means of violence or fear. The felonious taking element of common law robbery requires a taking with the felonious intent on the part of the taker to deprive the owner of his property permanently and to convert it to the use of the taker.

*State v. Shaw*, 164 N.C. App. 723, 728, 596 S.E.2d 884, 888 (citation omitted), *disc. review denied*, 358 N.C. 737, 602 S.E.2d 676 (2004).

In the present case, the State presented evidence that Defendant hit and pushed Ms. Taylor out of her Trailblazer and then drove off with her vehicle. In *State v. Hill*, 139 N.C. App. 471, 483, 534 S.E.2d 606, 614 (2000), this Court upheld the trial court's denial of a motion to dismiss in the face of a similar argument, holding that "a rational trier of fact could find that defendant, by forcing his way into the victim's car at gunpoint, driving the car to another location, and subsequently

forcing the victim out of her car and driving away with it, intended to permanently deprive the victim of her car." We further noted that "[t]he fact that defendant later abandoned the car a short distance away is not dispositive of the intent issue." *Id.* at 484, 534 S.E.2d at 614. As in *Hill*, we conclude that there was sufficient evidence for the jury to rationally find that Defendant possessed the requisite intent to permanently deprive Ms. Taylor of her vehicle. As such, the trial court properly denied his motion to dismiss as to this charge.

### C. Resisting, Delaying, or Obstructing a Public Officer

Defendant further challenges the denial of his motion to dismiss the charge of resisting, delaying, or obstructing a public officer. N.C. Gen. Stat. § 14-223 provides that "[i]f any person shall willfully and unlawfully resist, delay or obstruct a public officer in discharging or attempting to discharge a duty of his office, he shall be guilty of a Class 2 misdemeanor." N.C. Gen. Stat. § 14-223 (2013). The elements of this offense are "1) that the victim was a public officer; 2) that the defendant knew or had reasonable grounds to believe that the victim was a public officer; 3) that the victim was lawfully discharging or attempting to discharge a duty of his

office; 4) that the defendant resisted, delayed, or obstructed the victim in discharging or attempting to discharge a duty of his office; and 5) that the defendant acted willfully and unlawfully, that is intentionally and without justification or excuse." *State v. Sinclair*, 191 N.C. App. 485, 488-89, 663 S.E.2d 866, 870 (2008). In *State v. Lynch*, 94 N.C. App. 330, 332, 380 S.E.2d 397, 398 (1989), we held that "[t]he conduct proscribed under G.S. 14-223 is not limited to resisting an arrest but includes any resistance, delay, or obstruction of an officer in the discharge of his duties."

Here, the State's evidence tended to show that (1) Officer Bayne pulled his patrol car over and yelled at Defendant to stop; (2) Defendant ignored Officer Bayne and continued walking; (3) Officer Bayne yelled several more times to Defendant: "Hey, stop. I need to speak with you. Come here. Where are you going? Stop;" and (4) Defendant continued walking until Officer Bayne grabbed him by the arm, turned him around, and told him again that he needed to talk to him.

Defendant contends that the fact that he approached Officer Bayne's vehicle and asked for a ride is inconsistent with the notion that he violated N.C. Gen. Stat. § 14-223. However, that action does not negate the events which occurred during

Defendant's subsequent encounter with Officer Bayne during which – upon Officer Bayne finally being made aware that the person who had asked him for a ride was, in fact, the person he was seeking as the driver of the Trailblazer – Defendant repeatedly ignored Officer Bayne's commands for him to stop and kept walking away until Officer Bayne was forced to grab Defendant's arm and turn him around.

In *Lynch*, officers attempting to stop a suspect so as to ascertain his identity had to chase him down in order to do so. In upholding his conviction for resisting, obstructing, or delaying an officer, we stated that "[i]n this case . . . defendant fled from a lawful investigatory stop. Such flight may provide probable cause to arrest an individual for violation of G.S. 14-223." *Id*. at 334, 380 S.E.2d at 399.

Here, while Officer Bayne did not have to chase Defendant on foot, Defendant willfully continued to walk away from Officer Bayne and ignore his lawful commands to stop, ultimately requiring Officer Bayne to take hold of his arm and physically turn him around. Therefore, when viewed in the light most favorable to the State, we believe this charge was properly submitted to the jury.

## II.  Jury Instruction on Flight

Defendant's final argument is that the trial court erred by including in its jury instructions the following instruction regarding flight:

> The State contends, and the defendant denies, that the defendant fled. Evidence of flight may be considered by you, together with all other facts and circumstances in this case, in determining whether the combined circumstances amount to an admission or show a consciousness of guilt. However, proof of this circumstance is not sufficient in itself to establish the defendant's guilt.

An instruction concerning flight "is appropriate where there is some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime." *State v. Kornegay,* 149 N.C. App. 390, 397, 562 S.E.2d 541, 546 (citation and internal quotation marks omitted), *appeal dismissed and disc. review denied*, 355 N.C. 497, 564 S.E.2d 51 (2002). "'The relevant inquiry concerns whether there is evidence that defendant left the scene of the [crime] and took steps to avoid apprehension.'" *Id.* (quoting *State v. Levan,* 326 N.C. 155, 165, 388 S.E.2d 429, 434 (1990)). If we find "some evidence in the record reasonably supporting the theory that defendant fled after commission of the crime charged, the instruction is properly given. The fact that there may be other reasonable explanations for defendant's conduct does not render

the instruction improper." *State v. Irick*, 291 N.C. 480, 494, 231 S.E.2d 833, 842 (1977). However, this Court has held that "[m]ere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant *took steps to avoid apprehension*." *State v. Westall*, 116 N.C. App. 534, 549, 449 S.E.2d 24, 33 (emphasis added), *disc. review denied*, 338 N.C. 671, 453 S.E.2d 185 (1994).

The State argues that a flight instruction was warranted based on the evidence that when Officer Bayne observed Defendant speeding past his patrol car and pursued Defendant with lights and siren activated, Defendant drove so fast that Officer Bayne was unable to catch up with him. Defendant, conversely, contends that his act of walking up to Officer Bayne's police car shortly after the incident and asking for a ride is the antithesis of trying to avoid apprehension.

Even assuming, without deciding, that the flight instruction was erroneous, we are satisfied that any such error was not prejudicial.

> A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at

> the trial out of which the appeal arises. The burden of showing such prejudice under this subsection is upon the defendant.

N.C. Gen. Stat. § 15A-1443(a) (2013). In the present case, the evidence of guilt offered at trial was overwhelming. Consequently, any error arising from the instruction on flight would have been harmless.

## Conclusion

For the reasons stated above, we hold that Defendant received a fair trial free from prejudicial error.

NO PREJUDICIAL ERROR.

Judges HUNTER, JR. and ERVIN concur.

Report per Rule 30(e).