PARKER, Justice.
The issues before this Court are whether the Court of Appeals erred in holding (i) that the trial court erred in excluding evidence of the victim's prior sexual encounter, and (ii) that prejudicial error occurred in defendant's conviction for common law robbery. For the reasons discussed herein, we reverse the decision of the Court of Appeals on these two issues.
Defendant Vincent Lamont Harris was indicted on 24 June 2002 for the offenses of first-degree kidnapping, second-degree rape, and common law robbery. Defendant was tried at the 24 February 2003 criminal session of Superior Court, Granville County. The jury acquitted defendant of the first-degree kidnapping charge, but found defendant guilty on the charges of second-degree rape and common law robbery. The trial court found two aggravating factors, namely, that the offenses were especially heinous, atrocious, or cruel and that defendant is a predator. Defendant was sentenced to a minimum term of 188 months and a maximum term of 235 months imprisonment for the second-degree rape conviction and to a minimum term of 26 months and a maximum term of 32 months imprisonment for the common law robbery conviction, with the sentences to run consecutively.
At trial the State's evidence tended to show that late on the night of 13 April 2002, the victim, a sixteen-year-old high school student, was approached from behind by defendant as she was walking to a friend's house in Oxford, North Carolina. Defendant was twenty-eight years old, married, and the father of three children. Defendant walked with his arm around the victim and asked if she smoked marijuana. The victim replied in the negative, indicating that she had quit. Soon afterwards defendant grabbed her by the neck and threw her into an alleyway between a house and a church. Defendant then made her get up, pulled her behind the house, threw her down again, and pulled off her pants and underwear. Defendant forced his penis into the victim's vagina. When she tried to scream, he put his hand over her mouth and told her to be quiet. Next, defendant turned the victim over and forced his penis into her rectum. The victim screamed, and defendant covered her mouth, again telling her to be quiet. Defendant stood up and ordered the victim to pull up her pants and help him look for his lost cell phone. Then defendant again threw the victim to the ground, pulled her pants down, and forced his penis into her vagina. The victim testified that she could not scream and that defendant told her "[She] better not look at him so [she] wouldn't be able to identify him with the police."
According to the State's evidence, defendant asked the victim if she had any money. When she replied in the negative, defendant forced the victim to give him her six rings and told her that if she told anybody he would come back and kill her. The victim testified that she wore these rings all the time, that the one with her birthstone was a Christmas gift from her mother, and that two of the others were passed down from her grandmother to her mother to her. The victim further testified that defendant directed her to go around the church to leave and that the two left the scene in different directions. The victim continued on to her friend's house where she spent the night.
The next day when the victim returned home, she told her mother what had happened to her; and her mother took her to the police station. After giving her statement to Detective Shelly Chauvaux, the victim was referred to Maria Parham Hospital, where she underwent a rape kit evaluation conducted by nurse Wendy Medlin, Director of the District Nine Sexual Assault Program. At trial nurse Medlin testified as to what the victim had told her concerning the events on the night of 13 April 2002. Nurse Medlin also testified that her examination of the victim revealed that the victim had multiple lacerations, bruising, and tears in her anus and vagina and that her cervix was also "very bruised and swollen, red."
Defendant's evidence at trial tended to show that he and the victim had consensual, vaginal intercourse on 13 April 2002. Defendant testified that he first met the victim that night around 11:00 p.m. at the Texaco, where they talked and made plans to "hook up" later. Defendant did not know the victim; and in this conversation, which lasted approximately seven minutes, the victim told him that her boyfriend was angry with her because she got caught having sex in the woods. As planned, around midnight the two met up again and they walked, talked, and smoked marijuana together. According to defendant they then went behind the church where the victim took off her sweat pants and underwear and willingly had sex with defendant for approximately twenty minutes. Afterwards she gave defendant her rings in exchange for a dime bag of marijuana, having a value of approximately twenty dollars. They then walked away in different directions.
On cross-examination of the victim, the trial court did not allow testimony regarding the victim's sexual activity with her boyfriend earlier on the day of 13 April 2002. As required under N.C.G.S. § 8C-1, Rule 412(d), the trial court heard in camera testimony by the victim concerning this sexual activity. In the hearing the victim testified that she and her boyfriend had "attempted to" have sex. Regarding this attempted sexual act, the victim stated that she was not hurt in any way and that they did not attempt anal intercourse:
Q. [Victim], when you attempted to have sex with [your boyfriend], did he hurt you in any way?
A. No, ma'am
Q. Did you attempt any anal intercourse? Did you have anal intercourse with [your boyfriend]?
A. No, ma'am.
The court then pressed for clarification on whether there had been any penetration during this earlier sexual encounter:
THE COURT: [T]he boy with whom you tried to have sex earlier that day, did he put his penis into your vagina?
A. No, not quite.
THE COURT: Not quite. Did he attempt to?
A. Yes, sir.
When questioned why she did not have sex, the victim responded, "Because it didn't - something told me it wasn't right. It didn't feel right. That it - something told - I had the gut instinct that it would be wrong and that something bad would happen."
Applying the rape shield law, N.C.G.S. § 8C-1, Rule 412, to this testimony, the trial court ruled the evidence of the victim's prior sexual activity on 13 April 2002 inadmissable and stated the following:
Until I have a version that says that she was somehow just promiscuously wandering around having sex with this, that and the other all the time, I don't have that there. And even there doesn't mean necessarily that she consented in this case.
I think the Rape Shield law is designed to protect women from the shotgun defense that if she would do it with Jack, she'd do it with Jim . . . . And I think the only time it really becomes pertinent, this prior sexual behavior if defendant testifies that she was raped and up until that time - well, there is some - something very significant about the physical activity of some prior event that could have caused the same thing.
I think here, even if there's prior sex, the tearing really is a red - in some way a red herring. It's not really - whether it is tearing during consensual or nonconsensual sex, it's not really directly dispositive of whether there is a consent between her and Mr. Harris, one way or the other.
On defendant's appeal a divided panel of the Court of Appeals reversed the trial court and remanded for a new trial. State v. Harris, 166 N.C. App. 386, 602 S.E.2d 697 (2004). The Court of Appeals majority found error in the trial court's application of the rape shield law and determined that "the evidence of the prior sexual encounter on the day of the alleged rape should be admitted." Id. at 393, 602 S.E.2d at 701. The majority reasoned:
In this case the evidence is relevant and probative as to whether or not the victim consented to having sex with defendant. Had she consented, then it is within reason that no physical evidence of vaginal injury on the victim was caused by defendant. Thus, if the jury found the lacerations on the vagina (which evidence was used by the State to prove the rape) to have been caused by the attempted sexual encounter earlier that day, they could still harbor reasonable doubt as to whether or not the victim consented to having sex with defendant.
Id. Regarding the conviction for common law robbery, the Court of Appeals majority concluded that the victim's credibility on the rape issue was essential to "all charges stemming from the entire criminal transaction." Therefore, the common law robbery conviction was also reversed and remanded. Id.
Judge Levinson dissented in part and concurred in part, finding no error in defendant's convictions for second-degree rape and common law robbery, but agreeing with the majority's decision to remand the case for resentencing in light of Blakely v. Washington, 542 U.S. 296, 159 L. Ed. 2d 403 (2004). Harris, 166 N.C. App. at 396, 602 S.E.2d at 703. The State gave notice of appeal to this Court based on the dissenting opinion, which deemed the evidence of prior sexual activity properly excluded under N.C.G.S. § 8C-1, Rule 412.
In its appeal to this Court, the State contends that the Court of Appeals erred in reversing defendant's convictions. More specifically, the State argues that evidence of the victim's prior sexual activity was properly excluded under Rule 412 of the Rules of Evidence. We agree.
In pertinent part, N.C.G.S. § 8C-1, Rule 412 provides:
(b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:
. . . .
(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant . . . .
N.C.G.S. § 8C-1, Rule 412(b)(2) (2003).
This Court has stated that "[t]he Rape Shield Statute provides that 'the sexual behavior of the complainant is irrelevant to any issue in the prosecution' except in four very narrow situations." State v. Herring, 322 N.C. 733, 743, 370 S.E.2d 363, 370 (1988). The application of one of these exceptions is the basis for defendant's argument that a jury should be allowed to hear evidence of the victim's prior sexual activity. Although presenting a defense of consent, defendant also argues that a jury could infer that the victim's injuries were a result of the earlier encounter on 13 April 2002, thereby accounting for the "physical evidence of the alleged force" which was used to convict him of rape.
In construing the prior codification of the rape shield statute, N.C.G.S. § 8-58.6, this Court discussed the evolution of the admissibility of prior sexual conduct evidence and concluded that the statute was a "codification of this jurisdiction's rule of relevance as that rule specifically applies to the past sexual behavior of rape victims." State v. Fortney, 301 N.C. 31, 37, 269 S.E.2d 110, 113 (1980). In dicta the Court acknowledged that the predecessor to the statutory exception at issue here is "clearly intended, inter alia, to allow evidence showing the source of sperm, injuries or pregnancy to be someone or something other than the defendant." Id. at 41, 269 S.E.2d at 115. InFortney, as in the present case, defendant asserted consent as a defense. Holding that the evidence of semen stains defendant sought to have admitted was inadmissible, this Court stated:
Such evidence is not probative of the victim's consent to the acts complained of. Indeed, the only inference such evidence raises is that the victim had had sex with two individuals other than the defendant at some time prior to the night of the rape. Without a showing of more, this is precisely the kind of evidence the statute was designed to keep out because it is irrelevant and tends to prejudice the jury, while causing social harm by discouraging rape victims from reporting and prosecuting the crime.
Naked inferences of prior sexual activity by a rape victim with third persons, without more, are irrelevant to the defense of consent in a rape trial.
Id. at 43-44, 269 S.E.2d at 117 (footnote omitted).
The Court of Appeals distinguished Fortney from the instant case on the basis that "the sexual activity sought to be admitted before the jury relates to a sexual encounter by the victim on the day of the alleged rape." Harris, 166 N.C. App. at 393, 602 S.E.2d at 701. Acknowledging that "evidence of intercourse on the same day is clearly not always admissible[,]"id. (citingState v. Rhinehart, 68 N.C. App. 615, 316 S.E.2d 118 (1984)), the Court of Appeals nonetheless concluded that the evidence was "relevant and probative as to whether or not the victim consented to having sex with defendant." Id. Before this Court, defendant urges that the dicta in Fortney interpreting the statute is applicable. We do not agree.
Similarly, defendant's reliance on State v. Ollis, 318 N.C. 370, 348 S.E.2d 777 (1986), is misplaced. In Ollis, the victim testified in camera that on the same day the defendant raped her, another man had "'done the same thing [sic].'" Ollis, 318 N.C. at 376, 348 S.E.2d at 781. Arguing that the evidence was admissible under N.C.G.S. § 8C-1, Rule 412(b)(2), the defendant sought to question the victim concerning the sexual acts of this other man; but the trial court concluded the evidence was irrelevant and excluded it. Id. On appeal this Court agreed with the defendant that the evidence should have been admitted. At trial, the medical doctor who examined the victim testified that the victim "did receive or has been the object of inappropriate physical and sexual abuse." Ollis, 318 N.C. at 375, 348 S.E.2d at 781. Accordingly, evidence regarding the sexual acts of another man, if admitted, "would have provided an alternative explanation for the medical evidence presented . . . and falls within exception (b)(2) of Rule 412." Id. at 376, 348 S.E.2d at 781. We further stated that
we are not able to say that the jury would not have had a reasonable doubt about the defendant's guilt if they had known that the only physical evidence corroborating the victim's testimony of rape was possibly attributable to the acts of a man other than the defendant. We find that exclusion of that evidence was prejudicial to the defendant in presenting his defense to the charge of rape.
Id. at 377, 348 S.E.2d at 782 (citation omitted).
Ollis, however, is distinguishable from the present case in significant ways; namely, in Ollis: (i) evidence of the other sexual activity that this Court ruled should be admitted, as described by the victim, involved completed sexual intercourse; (ii) the other sexual activity occurred immediately after the alleged rape by defendant; (iii) the sexual activity with the other man was not consensual; and, finally, (iv) the defendant denied any sexual activity with the alleged victim and, therefore, did not rely on consent as a defense.
In the present case, defendant's arguments for admission of the excluded evidence must fail. Defendant admitted that he had sexual intercourse with the victim but asserted that the victim consented. Hence, the critical question, as the trial court noted, was not who inflicted the injuries; but rather, did the victim consent to having sexual intercourse with defendant? The Court of Appeals majority reasoned that had the jury known that a possibility existed that the victim's boyfriend inflicted the injuries, then the jury could have had a reasonable doubt as to whether the victim consented to sexual relations with defendant. Harris, 166 N.C. App. at 393, 602 S.E.2d at 701. However, based on the evidence presented during the in camera hearing and before the jury, this analysis would have required the jury to engage in pure speculation and conjecture.
No evidence proffered at the in camera hearing supports an inference that the victim's prior sexual activity was forced or caused any injuries. The victim's testimony was unequivocal that her boyfriend did not penetrate her during the previous consensual attempt at sexual intercourse. Moreover, nurse Medlin, who was qualified as an expert in the field of forensic sexual assault nursing, testified that injury to the cervix was not common during consensual sex. Nurse Medlin also opined that the injuries she observed on the victim, internally and externally, "were consistent with those of others who have complained of sexual assault[,]" and she stated that "typically in a consensual act you would only have one injury to one location of the body. [This victim] had multiple injuries to numerous places in the vaginal and anal area."
In this case, where consent is the defense, evidence of the prior sexual activity is precisely the type evidence the rape shield statute is intended to proscribe. The victim described an earlier sexual encounter that was consensual and was unlikely to have produced the type and number of injuries the expert testimony verified that she suffered. On this record, given the purpose of the rape shield statute, we hold that evidence of the victim's consensual attempt at sexual intercourse with her boyfriend is not probative on the issue of whether she consented to sexual activity with defendant, and the trial court properly excluded it pursuant to N.C.G.S. § 8C-1, Rule 412. See Fortney, 301 N.C. at 44, 269 S.E.2d at 117. Moreover, even assuming that the excluded evidence was probative, we conclude that the probative value, if any, to defendant was substantially outweighed by the danger of unfair prejudice to the State and the prosecuting witness. N.C.G.S. § 8C-1, Rule 403 (2003). Therefore, on the issue of second-degree rape, we reverse the Court of Appeals.
The State also argues that the Court of Appeals majority erred in holding that defendant's conviction for common law robbery should be reversed on the basis that "the victim's credibility after cross-examination as to her prior sexual encounter is essential to support all charges stemming from the entire criminal transaction." Harris, 166 N.C. App. at 393, 602 S.E.2d at 701. Having determined that the evidence of prior sexual activity was properly excluded, we agree with the State. Common law robbery is "the felonious taking of money or goods of any value from the person of another, or in his presence, against his will, by violence or putting him in fear." State v. Stewart, 255 N.C. 571, 572, 122 S.E.2d 355, 356 (1961). In the present case the evidence tended to show that after forcing the victim behind a building and raping her twice, defendant took six rings from her and threatened to kill her if she told anyone. Viewed in the light most favorable to the State, this evidence is sufficient to support the conviction for common law robbery. See, e.g., State v. Jerrett, 309 N.C. 239, 263, 307 S.E.2d 339, 352 (1983) (noting that in determining whether there is sufficient evidence to support every element of an offense charged, "we must be guided by the familiar rule that the evidence must be considered in the light favorable to the State"). Therefore, we reverse the Court of Appeals decision reversing defendant's conviction for common law robbery.
Finally, although this issue was not briefed to this Court, we affirm the Court of Appeals holding that the case must be remanded to the trial court for resentencing on the basis of Blakely v. Washington, 542 U.S. at ___, 159 L. Ed. 2d at 413 (holding that the statutory maximum for any offense is the "maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" (emphasis omitted)) and State v. Allen, 359 N.C. 425, 440-41, 444 & n.5, 615 S.E.2d 256, 266-67, 269 & n.5 (2005) (holding that the imposition of an aggravated sentence based on factors not found by the jury, other than facts to which a defendant has admitted or a prior conviction, is structural error and not harmless beyond a reasonable doubt).
The decision of the Court of Appeals as to defendant's convictions for second-degree rape and common law robbery is reversed, and the decision of that court as to the remand for resentencing is affirmed. AFFIRMED IN PART; REVERSED IN PART.