STATE OF NORTH CAROLINA v. RICHARD DANIEL COOK, Defendant

No. COA07-1262

(Filed 3 February 2009)

**1. Rape— statutory—cross-examination of victim—limited— comparable testimony from other witnesses**

The trial court did not err in a prosecution for statutory rape and other sexual offenses by not permitting defense counsel to cross-examine the victim more extensively about possible motives for fabricating her accusations. Counsel was able to cross-examine the victim about these matters, and, to the extent cross-examination was limited, was able to elicit comparable testimony from other witnesses.

**2. Evidence— statutory rape victim—sexual activity excluded**

The trial court did not err in a prosecution for statutory rape and other sexual offenses by excluding evidence of the victim's sexual activity. Although defendant indicated during cross-examination that a boy was available to testify that he had had sex with the victim during the same week that she accused defendant, defense counsel did not call the boy to testify at the in camera hearing required by the rape shield statute, and did not attempt to call him during the defense's case. Moreover, defendant failed to establish the relevance of the proposed testimony because the alleged sexual activity with the boy would not have produced the scarring found in a medical examination. Medical testimony to the contrary was speculative.

**3. Rape— statutory—subsequent false accusation—no offer of proof—unduly prejudicial**

The trial court did not err in a prosecution for statutory rape and other sexual offenses by excluding evidence of a subsequent false accusation where defendant did not make an offer of proof. The exclusion of other testimony about the victim's statements as confusing and unduly prejudicial was within the judge's discretion.

**4. Evidence— course of conduct—statutory rape and other offenses—additional incident**

The trial court did not err in a prosecution for statutory rape and other sexual offenses by admitting testimony from a detective about an incident not mentioned during the victim's

testimony. The victim's testimony established a course of conduct, of which the challenged incident was a part. The challenged testimony did not contradict the victim's testimony and sufficiently strengthened her testimony to be admitted as corroborative evidence.

Appeal by defendant from judgments entered 7 June 2006 by Judge Narley L. Cashwell in Alamance County Superior Court. Heard in the Court of Appeals 15 April 2008.

*Attorney General Roy Cooper, by Assistant Attorney General Chris Z. Sinha, for the State.*

*Brian Michael Aus for defendant-appellant.*

GEER, Judge.

Defendant Richard Daniel Cook appeals from his convictions of one count each of statutory rape, first degree sexual offense, and vaginal intercourse in a parental role, two counts of sexual offense in a parental role, and three counts of taking indecent liberties with a child. Defendant contends that the trial court erred in preventing defense counsel from asking the prosecuting witness certain questions pertinent to whether she had a motive to fabricate the charges against defendant. Because defendant was permitted to develop extensive comparable evidence on the issue, defendant has failed to show prejudice resulting from the exclusion of those specific questions. Additionally, defendant argues that the trial court erred in excluding evidence of prior sexually-related conduct by the prosecuting witness. Defendant, however, failed to make a sufficient offer of proof at trial to comply with N.C.R. Evid. 412. Accordingly, we hold defendant received a trial free of prejudicial error.

## Facts

The State presented evidence at trial tending to prove the following facts. Defendant is the stepfather of "Helen,"[1] who, at the time of trial, was 16 and in the 10th grade. Helen's mother married defendant when Helen was 11. In the summer of 2002, when Helen was 12, defendant began touching her breasts, grabbing her buttocks, and rubbing his hands along her legs. On several occasions, defendant offered Helen money if she would cooperate and, if she refused, he

---

1. The pseudonym "Helen" is used throughout the opinion to protect the minor's privacy and for ease of reading.

raised the amount. When Helen wanted to go out with friends, defendant told her she would have to "give him something." Helen did not tell anyone about these incidents because she was scared of defendant and thought that her mother would not believe her.

Sometime in December 2003, defendant asked Helen to accompany him to a plumbing job in Burlington, North Carolina. When they arrived at the house, defendant went inside to work while Helen stayed in the truck. After about an hour, defendant returned to the truck. Defendant opened the passenger door as if to retrieve some tools from the backseat, but instead grabbed Helen by the back of her neck and pushed her head down into the driver's seat. Defendant pulled down her stretch pants and underwear, unzipped his pants, and inserted his penis into her vagina. Defendant did not wear a condom. As Helen was screaming for him to get off of her, defendant told her to be quiet and that he would kill her if she told anyone. Although Helen did not immediately tell anyone what happened, around New Year's Eve 2003, she reported to a friend that defendant had raped her.

On 9 July 2004, defendant and Helen's mother were leaving for a weekend beach trip. Although they had planned for the children to stay with their aunt, Helen asked to sleep over at her friend Tabatha's house instead. That afternoon, Helen was alone in the living room. Defendant came home early from work while Helen's mother was running errands in town. Defendant grabbed Helen and pushed her down onto the couch, repeatedly telling her to be quiet. Defendant pulled her shorts to the side and put two of his fingers in her vagina, moving them in and out. Helen hit defendant, trying to get away. As he was touching Helen, defendant told her that she could spend the night at Tabatha's house. Defendant eventually stopped, and Helen's mother returned soon afterward.

Later that afternoon, Helen went to Tabatha's house to spend the night. When defendant called the next morning asking Helen to come home, Helen refused and said that she wanted to stay at Tabatha's house all weekend. Helen became upset as defendant and her mother called repeatedly, telling her to come home. Helen then told Tabatha that defendant had raped and sexually abused her and described what happened. Tabatha told her mother, who called the police.

Detective Michael Enoch responded to the call. When he arrived, he found Helen very upset and crying. She told him that defendant had been sexually abusing her and that the last time had been the

STATE v. COOK

[195 N.C. App. 230 (2009)]

previous evening. Helen was taken to the police station where she was interviewed further by Detective Enoch and Janet Hadler, a forensic interviewer with DSS. During the interview, Helen described what had happened the night before, as well as the incident in Burlington in December 2003.

Helen was then taken to be examined by Dr. Joseph Pringle. Helen told the doctor that defendant had fondled her breasts and buttocks and, more recently, had raped her and put his fingers in her vagina. Dr. Pringle's examination revealed no fresh bleeding or bruises in Helen's vaginal area, but he did find two scars on her hymen that appeared to be healed lacerations. Dr. Pringle believed that the scars indicated a penetrating-type injury to Helen's vaginal opening. According to Dr. Pringle, Helen's injuries were consistent with the medical history she had provided him and suggested that it was very likely there had been some sexual contact.

Later, on 19 July 2004, Hadler interviewed Helen again. Hadler believed, based on Helen's conduct during the interview and Hadler's discussions with other people who had interacted with Helen, that Helen's behavior was consistent with what is often seen in girls in her age group who have experienced the kind of traumatic events that Helen reported.

On 3 January 2006, defendant was indicted for two counts of statutory rape/sexual offense with a 14 year old (offense dates of 9 July 2004 and between 1 December 2003 and 31 December 2003), two counts of sexual offense by a person in a parental role (the same two offense dates), and three counts of indecent liberties with a child (the same two offense dates plus an offense date of between 1 June 2002 and 15 August 2002). At trial, defendant testified and denied ever touching Helen's breasts or buttocks. He remembered taking Helen to a house in Burlington, but denied raping her.

According to defendant, his relationship with Helen was good before he married Helen's mother, but after the marriage, Helen's attitude changed. She wanted her mother to get back together with her biological father, and she argued with defendant, calling him a son-of-a-bitch. Defendant recalled one occasion when, after he took away Helen's phone privileges, she ran out of the family's trailer yelling: "I hate you, I hate you!" Defendant testified that Helen complained about living in the trailer, about the cars the family had, and her desire to wear tight-fitting clothes. According to defendant, when Helen did not get what she wanted, she yelled that she hated

her family, slammed doors, kicked walls, kicked the dog, and hit her younger sister in the face.

Helen's mother similarly testified that Helen did not like the fact that she married defendant. She also described an incident when she let Helen spend the night at her friend Tabatha's house. Helen had had a bad attitude about having to leave her friend's house and come home.

Carrie Trent, one of Helen's friends, testified that she never saw defendant engage in any inappropriate sexual conduct with Helen. Trent reported that Helen told her that she considered defendant to be her real father and that she wanted defendant "to walk her down the aisle at her wedding because she felt that he was more of a Dad to her than her biological father."

On 6 April 2006, the jury convicted defendant of all the charges. The trial court consolidated into one judgment defendant's convictions for one count of statutory rape, one count of sexual offense in a parental role, and one count of indecent liberties and sentenced defendant to a presumptive-range term of 376 to 461 months. The trial court consolidated defendant's remaining convictions into a second judgment and sentenced defendant to a consecutive presumptive-range term of 376 to 461 months. Defendant timely appealed to this Court.

I

**[1]** Defendant first argues that the trial court erred by not permitting defense counsel to cross-examine Helen more extensively regarding her possible motives for fabricating her accusations against defendant. Defendant claims that the trial court prevented defendant from demonstrating that Helen was motivated to make false accusations because she was frustrated with her living conditions.

Under Rule 611(b) of the Rules of Evidence, "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." Our Supreme Court has held that "[t]he range of relevant cross-examination is very broad, but it is subject to the discretionary powers of the trial judge to keep it within reasonable bounds." *State v. Newman*, 308 N.C. 231, 254, 302 S.E.2d 174, 187 (1983). The trial court's rulings as to cross-examination "will not be held in error absent a showing that the verdict was improperly influenced thereby." *State v. Sams*, 317 N.C. 230, 240, 345 S.E.2d 179, 185 (1986). *See also State v. Hatcher*, 136 N.C. App. 524, 526, 524 S.E.2d

STATE v. COOK

[195 N.C. App. 230 (2009)]

815, 816 (2000) ("The trial judge's rulings in controlling cross examination will not be disturbed unless it is shown that the verdict was improperly influenced.").

Defendant challenges the trial court's decision to sustain the State's objections to four lines of questions. First, on cross-examination, Helen agreed that she had described to Detective Enoch and social workers fights that she had with her mother. Defense counsel then asked Helen: "What kind of fights did you have with your mother?" The trial court sustained the prosecutor's objection. Next, the trial court precluded defense counsel from asking Helen: "Do you recall crying a lot about having to do house work or you doing the work?" The trial court also sustained an objection to defense counsel's question: "[H]ow did you express your frustrations [over your living conditions]?" The final question that defense counsel was prevented from asking was: "Isn't it a fact that you didn't want your mother to marry [defendant]?"

Even assuming, *arguendo*, that the trial court should have allowed these questions, defendant has failed to establish a reasonable possibility that the verdict was improperly influenced by these rulings. *See* N.C. Gen. Stat. § 15A-1443(a) (2007) ("A defendant is prejudiced by errors relating to rights arising other than under the Constitution of the United States when there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises."). Defendant was able to develop evidence both on cross-examination of Helen and with other witnesses regarding Helen's potential motive to manufacture sexual allegations. Helen admitted during cross-examination that she fought with her mother and that she was frustrated with her living conditions. Helen acknowledged during cross-examination that she was ashamed of living in a trailer, that she did not want her friends to see where she lived, that she did not like the clothes she had, and that she often swapped clothes with friends at school. She also admitted telling people that her mother had said she hated Helen and wished that Helen were dead.

In addition to Helen's cross-examination testimony, Hadler, the DSS forensic examiner, testified that Helen told her that her mother gave her sisters preferential treatment and that Helen claimed that her mother had told Helen she wished Helen were dead. Helen's friend Carrie Trent confirmed that Helen was embarrassed about living in a trailer when her friends lived in houses and had nice clothes. Trent also stated that Helen told her that she wanted to go live with

Tabatha—the friend with whom Helen spent the night just prior to making the accusations against defendant. Both Helen's mother and defendant testified that Helen's attitude changed after they got married. They reported that Helen told them angrily on several occasions that she wished they were not married, and Helen wanted her mother to get back together with Helen's biological father.

In short, defense counsel was permitted to question Helen about her relationship with her mother, her belief that her mother preferred her sisters over Helen, and her frustration with her living conditions. To the extent that counsel was limited in some respects when cross-examining Helen, counsel was able to elicit comparable testimony from Hadler, Trent, defendant, and Helen's mother. We cannot conceive of how, in light of this extensive evidence, admission of testimony about the "kinds" of fights Helen had with her mother, her "crying" about having to do housework, "how" she expressed her frustration, and her desire that defendant and her mother not marry could reasonably have affected the verdict. These assignments of error are overruled.

II

**[2]** Defendant next contends that the trial court erred by excluding evidence of Helen's sexual activity under Rule 412. Defendant argues that trial counsel should have been permitted to (1) present the testimony of a boy ("C.T.") indicating that he had sex with Helen during the week that Helen accused defendant and (2) question Helen about sexual activity with her boyfriend.

Rule 412, known as the rape shield law, prohibits the introduction of evidence concerning the sexual activity of a complainant in a sexual offense case unless one of four exceptions applies:

> (b) Notwithstanding any other provision of law, the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:
>
> (1) Was between the complainant and the defendant; or
>
> (2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or
>
> (3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to

prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

(4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

N.C.R. Evid. 412(b). Defendant asserts that the proposed testimony falls within the second exception as tending to show that the acts charged were not committed by defendant.

When a defendant wishes to present evidence falling within the scope of Rule 412, he must "first apply to the court for a determination of the relevance of the sexual behavior to which it relates." N.C.R. Evid. 412(d). "The trial court is then required to 'conduct an *in camera* hearing . . . to consider the proponent's *offer of proof* and the argument of counsel . . . .' " *State v. Black*, 111 N.C. App. 284, 289, 432 S.E.2d 710, 714 (1993) (quoting N.C.R. Evid. 412(d)). The defendant bears the burden of "establish[ing] the basis of admissibility of such evidence." N.C.R. Evid. 412(d).

This Court addressed, in *Black*, the showing required in an *in camera* hearing. In that case, only the prosecuting witness testified during the *in camera* hearing, and she denied having been raped by two other men apart from the defendant. *Black*, 111 N.C. App. at 289, 432 S.E.2d at 714. Although defense counsel represented to the trial court that one of the men could testify at the *in camera* hearing, the man was not called as a witness, and defense counsel offered no actual proof of the sexual activity. *Id.* In holding that the trial court had not erred by precluding the defendant from cross-examining the prosecuting witness about the sexual activity, this Court explained:

Under these circumstances, the trial court properly refused to allow defendant to question [the prosecuting witness] before the jury regarding her sexual relations with these men. Rule 412(d) contemplates that the party desiring to introduce evidence of a rape complainant's past sexual activity must *offer some proof* as to both the existence of such activities and the relevancy thereof. Since [the prosecuting witness'] *denial* constituted the only "evidence" on this point, there was *no evidence of sexual activity* the relevance of which the trial court was obligated to determine.

*Id.* at 289-90, 432 S.E.2d at 714.

With respect to the claimed sexual activity with C.T., this case is indistinguishable from *Black*. The primary *in camera* hearing in this case occurred during Helen's cross-examination and related to whether defense counsel would be allowed to ask Helen certain questions. At that time, defense counsel asked Helen whether she had sex with C.T., and she responded: "No." Later during the hearing, defense counsel represented to the trial court that C.T. was available to testify that he had sex with Helen earlier during the same week that she accused defendant. Defense counsel, however, failed to call C.T. to testify at the *in camera* hearing during the State's case and did not attempt to call him as a witness during the defense's case, at which point defendant could have renewed his contention regarding the relevance of C.T.'s testimony.

Thus, as in *Black*, the only evidence presented regarding the alleged sexual activity with C.T. was Helen's denial. Under *Black*, therefore, the trial court properly excluded C.T.'s testimony at trial. *See also State v. Hammett*, 182 N.C. App. 316, 319, 642 S.E.2d 454, 457 (holding *Black* controlled as complainant's denial was only evidence offered at *in camera* Rule 412 hearing), *appeal dismissed and disc. review denied*, 361 N.C. 572, 651 S.E.2d 227 (2007).

Moreover, even if defense counsel's representation regarding the proposed testimony was sufficient to comply with Rule 412(d), defendant failed to establish the relevance of C.T.'s testimony. Defense counsel claimed that C.T. would testify that he had sex with Helen on either 7 or 8 July 2004, just a day or two before Helen accused defendant of sexual abuse. Dr. Pringle, however, testified that he examined Helen within a week of the allegations, on 14 July 2004, and that the scarring he found in her vaginal area had occurred "at least a month or more" prior to the examination. Thus, the undisputed medical evidence indicated that Helen's having sex with C.T. could not have resulted in the vaginal scarring, and therefore C.T.'s testimony would not tend to show that defendant did not commit the charged offenses. *See State v. Holden*, 106 N.C. App. 244, 247, 416 S.E.2d 415, 417 (holding that there must be "a temporal connection between the dates of the alleged offense and the evidence pointing to another perpetrator"), *appeal dismissed and disc. review denied*, 332 N.C. 669, 424 S.E.2d 413 (1992).

With respect to Helen's sexual activity with her boyfriend, defendant points to Helen's admission during the *in camera* hearing that her boyfriend had inserted his finger in her vagina while she

was partially nude in a closet with him. Defendant, however, failed to present evidence during the *in camera* hearing that the boyfriend's digital penetration could have caused the internal scarring attributed to the charged offenses. *See State v. Harris*, 360 N.C. 145, 153, 622 S.E.2d 615, 620 (2005) ("No evidence proffered at the *in camera* hearing supports an inference that the victim's prior sexual activity was forced or caused any injuries.").

At the close of that *in camera* hearing, defense counsel asked if the trial court would revisit the issue during Dr. Pringle's testimony. The trial court noted: "[S]ince I have not heard the testimony of that physician nor has he been called, I don't know, I can't give you a prediction at this particular time as to what I would or would not do in that regard. You certainly may make your request again when and if the doctor testifies."

Defendant acknowledges Dr. Pringle's testimony at trial that Helen's vaginal scarring was consistent with penetration by a penis, but points to Dr. Pringle's added testimony that he "supposed" the scarring could have been caused by digital penetration if "enough force was applied and it was done long enough." Defendant did not, however, renew his request to ask about the boyfriend after Dr. Pringle's testimony.

Even assuming, however, that Dr. Pringle's trial testimony could support reversal of the ruling following the *in camera* hearing during Helen's cross-examination, because defendant presented no evidence regarding the force used by Helen's boyfriend or the length of time of the penetration, any contention based on Dr. Pringle's conditional supposition would amount to speculation. The trial court, therefore, did not err in excluding evidence of Helen's sexual activity with her boyfriend. *See id.* ("[B]ased on the evidence presented during the *in camera* hearing and before the jury, this analysis would have required the jury to engage in pure speculation and conjecture.").

### III

**[3]** In his third argument on appeal, defendant contends that the trial court erroneously excluded evidence that Helen made false accusations that "A.F." raped her. Defendant argues that he should have been allowed to call as a witness not only A.F., but also Christen Rhoten who would have testified that Helen admitted falsely accusing A.F. of rape. In the course of the *in camera* hearing during Helen's cross-examination, Helen denied having made

any rape allegation against A.F. and denied having had the conversation with Rhoten.

Defendant asserts that "[t]he trial court excluded any testimony of [A.F.] under Rule 412." At the close of the *in camera* hearing during Helen's cross-examination, however, the trial court specifically ruled that it would not be excluding A.F.'s testimony at that juncture under either Rule 412 or Rule 403 of the Rules of Evidence. Yet, defendant never sought to call A.F. as a witness or made any specific offer of proof as to his testimony. The admissibility of his testimony is, therefore, not preserved for appellate review. N.C.R. App. P. 10(b)(1); *Dogwood Dev. & Mgmt. Co., LLC v. White Oak Transp., Inc.*, 362 N.C. 191, 196, 657 S.E.2d 361, 364 (2008).

Subsequently, the trial court conducted an additional *voir dire* hearing at which Rhoten testified that Helen and A.F. were boyfriend and girlfriend a year after Helen made the accusations against defendant, that Helen initially said that A.F. had raped her, and that she later admitted that they had consensual sex. The trial court concluded that Rhoten's testimony was not barred by Rule 412, but that it should be excluded under Rule 403, stating:

> I'm going to find and conclude that the evidence proffered by Ms. Rhoten is not evidence . . . that would be barred by Rule 412, the rape shield statute. However, having reviewed this evidence, the Court is of the opinion that taking into consideration all of the circumstances testified to and the time or temporal nature of the evidence offered by Ms. Rhoten, that while the Court concludes that it may be relevant to some degree, this evidence should be excluded because its probative value is substantially outweighed by the dangers of unfair prejudice, and also by the danger of confusion of the issues and mislead[ing] the jury.

We review decisions under Rule 403 for abuse of discretion. *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992) (holding that Rule 403 determination may be reversed for abuse of discretion only upon showing that trial court's ruling was manifestly unsupported by reason or could not have been result of reasoned decision).

Defendant contends that "[i]t is error for a trial court to exclude evidence that a prosecutrix has made allegations of sexual misconduct and later withdrawn them." As support for this contention, defendant cites *State v. Ginyard*, 122 N.C. App. 25, 468 S.E.2d 525 (1996). In *Ginyard*, however, this Court did not hold that a trial court

must admit evidence of false accusations of rape or that exclusion of the evidence under Rule 403 is necessarily an abuse of discretion. Instead, the Court ordered a new trial because, rather than exercising its discretion, the trial court excluded the evidence of false accusations as a matter of law based on an erroneous belief that the evidence was irrelevant and, therefore, had no probative value at all under Rule 403.

In contrast, in this case, the trial court did recognize that Rhoten's testimony was relevant "to some degree." It concluded that the relevance was, however, substantially outweighed by the risk of unfair prejudice and the danger of confusing the issues and misleading the jury. We do not believe that the trial court's conclusion was manifestly unreasonable.

Rhoten's testimony would have indicated that Helen had admitted to sexual intercourse with her boyfriend, but falsely claimed it was nonconsensual. Defendant, however, claimed that Helen made up claims that they had had sexual intercourse in order to retaliate against him. Thus, in one instance, Helen was covering up consensual intercourse with her boyfriend, while, in the other, she was alleged to have been lying about intercourse with her stepfather. Because of the different circumstances, the trial court could reasonably determine that Rhoten's testimony was not highly probative when compared to the potential for unfair prejudice if the jury perceived Helen as promiscuous. *See State v. Harris*, 189 N.C. App. 49, 64, 657 S.E.2d 701, 711 (2008) (holding that trial court did not abuse discretion in excluding under Rule 403 evidence of prior motel stays by prosecuting witness and defendant in case in which defendant denied that sexual encounter giving rise to charges occurred because of "the questionable relevance of this evidence and its likely prejudicial effect on the remainder of [the prosecuting witness'] testimony"), *disc. review denied*, 362 N.C. 366, 664 S.E.2d 315 (2008).

Moreover, the temporal sequence created a risk of jury confusion. Dr. Pringle had indicated that Helen's internal scarring likely resulted from penetration by a penis. Although defendant did not contend, and the evidence did not support, that Helen's intercourse with A.F. could have caused the scarring, a jury could have been confused and mistakenly believed that the evidence was offered as an alternative explanation for the scarring.

Accordingly, we hold the trial court did not abuse its discretion in excluding the evidence under Rule 403. *See Harris*, 360 N.C. at 154,

622 S.E.2d at 620 ("Moreover, even assuming that the excluded evidence [of prior sexual activity] was probative, we conclude that the probative value, if any, to defendant was substantially outweighed by the danger of unfair prejudice to the State and the prosecuting witness."); *State v. McCarroll*, 336 N.C. 559, 564, 445 S.E.2d 18, 21 (1994) (stating that evidence that prosecuting witness had a sexual experience with someone other than defendants "might run afoul of N.C.G.S. § 8C-1, Rule 403").

## IV

**[4]** Defendant's final argument on appeal is that the trial court should not have permitted Detective Enoch to testify about an incident of digital penetration that was not also mentioned during Helen's testimony. At trial, the prosecutor asked Detective Enoch a general question regarding whether he remembered Helen telling him of any other incidents of inappropriate sexual contact by defendant. When defense counsel objected, the trial court excused the jury, heard Enoch's *voir dire* testimony, and considered arguments regarding its admissibility as corroborative evidence.

After ruling that Enoch's testimony was admissible, the trial court brought in the jury and gave it a limiting instruction on corroborative evidence—at defendant's request—before permitting Enoch to testify. Enoch then testified:

> [Helen] stated that there was one night that she was sitting out on a hill with a blanket out to sit in her yard and look at stars after dark. She stated that [defendant] came out and there was no one else outside or around. He came out, sat down on her legs. I do not recall whether she said he pulled her shorts down or to the side, but he then attempted to insert a finger into her vagina while sitting there.

Defendant contends that this evidence should have been excluded because it did not, in fact, corroborate Helen's testimony since she never mentioned such an incident.

In *State v. McGraw*, 137 N.C. App. 726, 529 S.E.2d 493, *disc. review denied*, 352 N.C. 360, 544 S.E.2d 554 (2000), this Court set out the general principles governing corroborative evidence:

> It is well-settled that a witness' prior consistent statements are admissible to corroborate the witness' sworn trial testimony. Corroborative evidence by definition tends to strengthen, con-

STATE v. COOK

[195 N.C. App. 230 (2009)]

firm, or make more certain the testimony of another witness. Corroborative evidence need not mirror the testimony it seeks to corroborate, and may include new or additional information as long as the new information tends to strengthen or add credibility to the testimony it corroborates. Prior statements by a witness which contradict trial testimony, however, may not be introduced under the auspices of corroborative evidence.

*Id.* at 730, 529 S.E.2d at 497 (internal citations and quotation marks omitted). A trial court's determination that evidence is admissible as corroborative evidence is reviewed for abuse of discretion. *State v. Covington*, 290 N.C. 313, 337, 226 S.E.2d 629, 645-46 (1976).

Defendant's argument that Enoch's testimony contradicted Helen's testimony because it introduced information about an "additional" incident of digital penetration about which Helen did not testify was rejected by the Supreme Court in *State v. Ramey*, 318 N.C. 457, 349 S.E.2d 566 (1986). In *Ramey*, the victim testified that the defendant had begun touching his penis when he was five years old and then described one incident of " 'this' " touching although the victim also indicated that the conduct had occurred more than five times. *Id.* at 470, 349 S.E.2d at 574. The investigating detective then testified about another specific incident when " 'this' " happened, although the victim had not described that particular incident. *Id.* at 469-70, 349 S.E.2d at 574. In holding that the detective's testimony was admissible as corroborative evidence, the Court stated: "[The victim's] testimony clearly indicated a course of continuing sexual abuse by the defendant. The victim's prior oral and written statements to [the detective], although including additional facts not referred to in his testimony, tended to strengthen and add credibility to his trial testimony. They were, therefore, admissible as corroborative evidence." *Id.* at 470, 349 S.E.2d at 574.

Similarly, Helen testified that the first time she remembered defendant touching her was in the "summer time of 2002" when she was 12 and that he touched her other times including the incidents in December 2003 and 9 July 2004. Under *Ramey*, Helen's testimony established a course of sexual misconduct by defendant. *See id.* at 470, 349 S.E.2d at 574. Because Enoch testified to an incident of digital penetration within defendant's course of conduct and did not directly contradict Helen's testimony, his testimony sufficiently strengthened Helen's testimony to warrant its admission as corroborative evidence. *See id.* We accordingly find no error.

No Error.

Judges WYNN and CALABRIA concur.