STROUD, Judge.
 

 *505
 
 Defendant appeals his conviction and judgment for first degree murder. Where the written witness statement provided to police soon after the incident was presented by the State to corroborate her trial testimony, we find that the statement did not materially differ from her
 
 *506
 
 trial testimony, so the trial court properly allowed the statement for this purpose. The trial court also correctly instructed the jury only on first degree murder and not voluntary manslaughter, since the State's evidence was positive as to all of the elements of first degree murder, and there was no evidence that defendant acted in "the immediate grip of sufficient passion" to require instruction on a lesser offense. We therefore conclude that there was no error in defendant's trial.
 

 I. Background
 

 The State's evidence tended to show that on 12 September 2013, defendant was trying to get into Shannon Smith's home while she, her boyfriend Tyrone Allmond, and her children were inside. Ms. Smith yelled at defendant to leave and eventually threw a chair at him. Mr. Allmond told defendant to leave; the two continued to have "some words[,]" and then defendant shot Mr. Allmond who died from his gunshot wounds. Defendant was indicted for murder and found guilty by a jury of first degree murder. The trial court entered judgment and sentenced defendant to life imprisonment without parole. Defendant appeals.
 

 II. Out-of-Court Statement
 

 An eyewitness had provided a signed statement to the police which the State later introduced at trial over defendant's objection. The statement read:
 

 Tyrone Allmond was at my mother's house, Kimberly Durant .... It was me, my sister and my cousin, Tyrone. Ma was in bed. Me and my sister was in the room playing with my son. Tyrone came in and said, Cuz, come up to the top of the hill and let's talk. ...
 

 He told Ma bye and he left. I asked my sister Ty'Onika to watch my baby. So I got him ready for bed and put him down. It had to be after 10:00 o'clock p.m. but I remember telling my sister 10:47 when she asked about the time.
 

 By this time Shanda, my cousin, had came down. I asked her to walk with me up to the top of the hill, and she did. ... We were by Edwina Hainey's apartment when I heard Shannon, Tyrone's girlfriend, fussing. She was fussing about something on FaceBook and Twitter. She was loud and that drew attention.
 

 A group of guys started getting closer. She was coming out of Ms. Edwina's apartment. As I was getting close Tyrone had walked up. Shannon was walking back to her
 
 *507
 
 apartment and Tyrone was following. He was like, Get the kids inside, wash them up. It's a school night. The kids were outside running around. There are two of them.
 

 Tyrone goes in the apartment followed with the kids, then Shannon. Just then Smoke[, defendant,] started in the apartment and Shannon told him to get out. Smoke tried to push his way in. Shannon threw a chair at Smoke. That's when Tyrone got in the middle and told Smoke to leave. He was like, "Just leave. Go on ahead, just leave." Smoke was like, "Word, Word Bone." Bone was like, "What, what you mean?" Smoke was like, "All right, Bones, all right." That's when Smoke pulled a little handgun like a little smaller than yours. Smoke started shooting at Bones. Bones started to run, but couldn't get far before he collapsed.
 

 After I saw my cousin drop, I ran to my mama's house and told her Smoke was-and told her. Smoke was wearing a black shirt and blue jeans. They could have been shorts because you know how they sag. It wasn't long after the shooting I went back up the hill after I told Ma about it. I've
 
 *171
 
 known Smoke my whole life growing up and have seen him around.
 

 All this is what I saw. No one has made any threats or promises against me for me to say this. I don't know Smoke's real name but his last name's Allbrooks. I remember now his first name is Carlouse. Bones is a nickname we call my cousin Tyrone Allmond.
 

 The trial court allowed the jury to hear the testimony "not for the truth of the matters asserted therein
 
 but to determine whether or not State's Exhibit 3A does or does not
 

 corroborate the testimony of Bre'Onica Durant
 
 ." (Emphasis added.) Defendant contends that the trial court erred in overruling his objection and allowing the witness to testify to the out-of-court statement "where it added critical details that were not otherwise shown by the evidence[.]" (Original in all caps.)
 

 "A trial court's determination that evidence is admissible as corroborative evidence is reviewed for abuse of discretion."
 
 State v. Cook
 
 ,
 
 195 N.C. App. 230
 
 , 243,
 
 672 S.E.2d 25
 
 , 33 (2009).
 

 Prior consistent statements of a witness are admissible for purposes of corroboration even if the witness has not been impeached. When so offered, evidence of a prior consistent statement must in fact corroborate a
 
 *508
 
 witness's later testimony; however, there is no requirement that the rendition of a prior consistent statement be identical to the witness's later testimony. Slight variances in the corroborative testimony do not render it inadmissible. In order to be corroborative and therefore properly admissible, the prior statement of the witness need not merely relate to specific facts brought out in the witness's testimony at trial, so long as the prior statement in fact tends to add weight or credibility to such testimony.
 

 In order to be admissible as corroborative evidence, a witness' prior consistent statements merely must tend to add weight or credibility to the witness' testimony. Further, it is well established that such corroborative evidence may contain new or additional facts when it tends to strengthen and add credibility to the testimony which it corroborates.
 

 Moreover, if the previous statements are generally consistent with the witness' testimony, slight variations will not render the statements inadmissible, but such variations affect only the credibility of the statement. On the other hand, the witness's prior statements as to facts not referred to in his trial testimony and not tending to add weight or credibility to it are not admissible as corroborative evidence; additionally, the witness's prior contradictory statements may not be admitted under the guise of corroborating his testimony.
 

 State v. Walker
 
 ,
 
 204 N.C. App. 431
 
 , 435-36,
 
 694 S.E.2d 484
 
 , 488-89 (2010) (citations, quotation marks, ellipses, and brackets omitted).
 

 Defendant argues that the statement added the following "critical facts": defendant
 

 purportedly said to Tyrone Allmond ("Word, Word Bone") and a description of Mr. Allbrooks "pulling a little handgun like a little small[er] than yours" and "started shooting at [Tyrone]" at which Tyrone "started to run but couldn't get far before he collapsed."
 

 First, many of the "critical facts" noted by defendant are present in both the witness's statement and testimony. For instance, the witness testified, "He was like, " 'Word, Bone,' 'Word, Bone[,]' " and "that's when the
 
 *509
 
 shots started going off, and I seen my cousin running." But other facts noted by defendant as "critical facts" are not critical facts. Both the witness's statement and trial testimony agreed that defendant approached Ms. Smith's apartment, Mr. Allmond told him to leave, an argument ensued, and defendant shot Mr. Allmond. "[S]light variations will not render statements inadmissible[,]"
 

 id.
 

 ,
 
 204 N.C. App. at 436
 
 ,
 
 694 S.E.2d at 488
 
 , and thus the trial court did not abuse its discretion in allowing in the out-of-court statement for corroboration of the witness's testimony.
 
 See
 

 Cook
 
 ,
 
 195 N.C. App. at 243
 
 ,
 
 672 S.E.2d at 33
 
 . This argument is overruled.
 

 III. Lesser-Included Offense Instruction
 

 Defendant next argues that the trial court erred in failing to instruct the jury on the lesser-included offense of voluntary
 
 *172
 
 manslaughter. "A trial court's decision not to give a requested lesser-included offense instruction is reviewed
 
 de novo
 
 on appeal."
 
 State v. Matsoake
 
 ,
 
 243 N.C. App. 651
 
 , 657,
 
 777 S.E.2d 810
 
 , 814 (2015),
 
 disc. review denied
 
 ,
 
 368 N.C. 685
 
 ,
 
 781 S.E.2d 485
 
 (2016).
 

 The trial court must instruct the jury upon a lesser-included offense when there is evidence to support it. However, when the State's evidence is clear and positive with respect to each element of the offense charged and there is no evidence showing the commission of a lesser-included offense, it is not error for the trial judge to refuse to instruct the jury on the lesser offense.
 

 To determine whether the evidence supports the submission of a lesser-included offense, courts must consider the evidence in the light most favorable to the defendant.
 

 Id.
 
 at 656-59,
 
 777 S.E.2d at 814-15
 
 (citations, quotation marks, and brackets omitted).
 

 Defendant contends that when he "responded to Tyrone's words or his non-lethal assault, ... [he] was acting under the immediate grip of sufficient passion so as to be guilty of at most voluntary manslaughter." Defendant did not testify nor did any witnesses testify on his behalf. The evidence offered from the State indicated defendant was the initial aggressor in the incident, and he was the only one to make any threats or to perform any violent actions. There is simply no evidence to support "the immediate grip of sufficient passion" for the purposes of a voluntary manslaughter instruction.
 
 See
 

 State v. Long
 
 ,
 
 87 N.C. App. 137
 
 , 141,
 
 360 S.E.2d 121
 
 , 123 (1987) ("The court is required to instruct the jury as to a lesser included offense only when there is evidence from which
 
 *510
 
 the jury could find that such lesser offense was committed. Voluntary manslaughter is a lesser included offense of murder and is defined as the unlawful killing of a human being without malice, premeditation or deliberation. Killing another while under the influence of passion or in the heat of blood produced by adequate provocation is voluntary manslaughter. To reduce the crime of murder to voluntary manslaughter, the defendant must either rely on evidence presented by the State or assume a burden to go forward with or produce some evidence of all elements of heat of passion on sudden provocation." (citations and quotation marks omitted)). This argument has no merit.
 

 IV. Double Jeopardy
 

 Lastly, defendant "preserve[s]" the argument that the trial court erred in denying his motion to dismiss because "the constitutional prohibition against double jeopardy prevented him from being tried a second time after the first trial ended when the jury could not reach a unanimous verdict." (Original in all caps.) Defendant acknowledges that our courts have already rejected his contention but raises it "to preserve the matter for further review." Indeed, "[t]he courts in this country have long held that the prohibition against double jeopardy does not prevent defendant's retrial when his previous trial ended in a hung jury."
 
 See
 

 State v. Odom
 
 ,
 
 316 N.C. 306
 
 , 309,
 
 341 S.E.2d 332
 
 , 334 (1986). We note defendant's attempt to preserve the issue.
 

 V. Conclusion
 

 For the foregoing reasons, we determine there was no error.
 

 NO ERROR.
 

 Judges DIILLON and MURPHY concur.